## METROPOLITAN CASUALTY INSURANCE COMPANY OF NEW YORK *et al.* v. HUHN. The Same v. REIGER.

1. Though the death of claimant's husband resulted from injuries received in an accident which occurred outside of the State of Georgia, the Industrial Commission of this State was not without jurisdiction to entertain the case growing out of a claim for compensation.

2. The Georgia workmen's compensation act is not void because in violation of article 6, section 18, paragraph 1, of the constitution of the State of Georgia (Civil Code, § 6545).

Juries, 35 C. J. p. 148, n. 9; p. 150, n. 17.

Workmen's Compensation Acts, ..C. J. p. 10, n. 51; p. 12, n. 70; p. 20, n. 41; p. 26, n. 94; p. 28, n. 17 New; p. 32, n. 46; p. 39, n. 80 New; p. 47, n. 33; p. 115, n. 37; p. 116, n. 47.

3. Nor are sections 56, 57, 58, and 59 of the act void because in violation of the part of the constitution of this State last referred to.

4. The contention that there can be no recovery by the claimant against the plaintiffs in error, because sections 6, 7, 12, 16, 17, and 18 of the act in question are "void, unreasonable, and contrary to public policy," can not be sustained. The portions of the act referred to are not "so unreasonable, so arbitrary, and so compulsory" as to force an employer to come within the provisions of the act and the amendments thereto, and to deny him the right to freely and voluntarily enter into a contract of employment with claimant. Nor are these six sections last referred to so compulsory as to render the act and the amendments thereto, with all their provisions, void of any extraterritorial effect.

5. The Georgia workmen's compensation act is not void in that it "interferes with and attempts to regulate interstate commerce, in so far as this particular case is concerned." The business of providing public baseball games for profit, between clubs or professional baseball players in a league, although necessarily involving the constant and repeated traveling of the players from one State to another, provided for by the organization employing them, is not interstate commerce.

6. The relation between the deceased baseball player, the husband of the claimant in this case, and the Augusta Baseball Club, was that of employee and employer in the sense in which those terms are used in the Georgia workmen's compensation act.

7. The findings of fact by the commissioner who heard this case in the first instance were in compliance with the statute as to making such findings.

8. There was sufficient evidence in the record to warrant the commission in making the award complained of.

Nos. 5979, 5980. FEBRUARY 16, 1928.

Appeal; from Richmond superior court—Judge A. L. Franklin. August 12, 1926.

*Bryan & Middlebrooks,* for plaintiffs in error.

*James S. Bussey Jr.,* contra.

BECK, P. J. These two cases arose under the Georgia workmen's compensation act. Both are death cases. Emil Huhn and Frank Reiger were killed in the same accident, and their cases are alike, with the exception that Huhn was driving the automobile which turned over, while Reiger was sitting on the front seat with him; so that the record in one case, with the exception stated, is like the record in the other case. The points of law involved in the two cases are substantially the same, except with reference to the wilful misconduct of Huhn as driver of the ill-fated car, which differs from the wilful misconduct of Reiger, who was sitting alongside of Huhn when the car turned over. The alleged employer is Augusta Baseball Company Incorporated, a Georgia corpora-

tion engaged in the business of operating the Augusta Baseball Club as a member of the South Atlantic League of baseball clubs, composed of teams represented by the cities of Augusta and Macon in Georgia, cities in South Carolina, Charlotte in North Carolina, and Nashville, Tennessee. Huhn was manager of the Augusta Baseball Club, while Reiger was a pitcher on the Augusta team. Tobe Livingston, Chris Haury, Harry Smythe, Joseph H. Ruskey, and Kenneth Sedgwick were other players of the Augusta Baseball Club. All of these players were riding in the automobile at the time it turned over. Huhn was driving the car that night, while Reiger was sitting on the front seat with him, and other ball-players were sitting on the rear seat of the seven-passenger touring-car owned and operated by the Augusta Baseball Club for the purpose of transporting these players and others from city to city and State to State in the South Atlantic League. As a result of this automobile turning over on a public highway in South Carolina, at a point about sixty-five miles south of Charlotte, N. C., and about fifteen miles south of Camden, S. C., on its way from Charlotte, through South Carolina, to Augusta, Georgia, on September 5, 1925, Huhn and Reiger on the front seat were killed,. and the other named players were injured. The widows of the deceased players brought their claims against the Augusta Baseball Club and the Metropolitan Casualty Insurance Company of New York, for compensation under the Georgia workmen's compensation act. These claims came on for hearing before Commissioner Norman, of the Industrial Commission of Georgia, in Augusta, Georgia, on December 8, 1925, at which time it was agreed by all the parties that one hearing would be held for these and other claims, so that the evidence common to all claims would be taken only one time and considered as a part of the record in each case. The commissioner rendered an award favorable to the claimants. Subsequently, upon application for review by a full commission, the Industrial Commission rendered an award sustaining that made by Commissioner Norman. An appeal from the award of the full commission was taken by the Baseball Company and the Insurance Company; and after a hearing in accordance with the statute, the judge of the superior court took the case under advisement and consideration, and on August 12, 1926, passed an order denying and dismissing the appeal and affirming the award.

To this judgment the employer and the insurance carrier excepted upon several grounds.

1. One of the grounds of exception insisted upon is that the Industrial Commission of Georgia had no jurisdiction to try the case and render the award complained of, "as the accident which caused the death of claimant's husband happened in the State of South Carolina." In section 37 of the Georgia workmen's compensation act (Ga. L. 1920, p. 187) it is provided, "That (a) where an accident happens while the employee is employed elsewhere than in this State, which would entitle him or his dependents to compensation if it had happened in this State, the employee or his dependents shall be entitled to compensation, if the contract of employment was made in this State, and if the employer's place of business is in this State, or if the residence of the employee is in this State; provided his contract for employment was not expressly for service exclusively outside of the State. (b) Provided, however, if an employee shall receive compensation or damages under the laws of any other State, nothing herein contained shall be construed so as to permit a total compensation for the same injury greater than is provided for in this act." This section, given a reasonable construction, confers upon the Industrial Commission, in the exercise of the powers given to it by the act referred to, the authority to entertain jurisdiction of a case like the present, where the claim is made by the proper parties for compensation for injuries which occurred in another State. The contract between the Baseball Company and Huhn and Reiger, its employees, was not expressly for services "exclusively outside of the State" of Georgia. It would seem to be the necessary inference that inasmuch as the Industrial Commission has jurisdiction of all cases involving claims for compensation under the provisions of this act, it would have jurisdiction of cases growing out of claims for compensation for injuries occurring out of the State, as express provision for such claim is made in the section just quoted. And no doubt is left as to the commission's jurisdiction of such cases when we read, in connection with section 37, the following portion of section 56: "If the injury occurred without the State of Georgia, and is one for which compensation is payable under this act, then the hearing above referred to may be held in the county of the employer's residence or place of business, or

in any other county of the State which will, in the discretion of the commission, be the most convenient."

2.　Plaintiffs in error also insist that the judgment excepted to is contrary to law, on the ground that the original motion filed by them at the hearing before Commissioner Norman, which is a part of the record in the case, should have been sustained.　In the motion just referred to the act of the legislature referred to as the Georgia workmen's compensation act is attacked upon several constitutional grounds; one of these grounds being that the act is in violation of art. 6, sec. 18, par. 1, of the constitution of the State of Georgia (Civil Code, § 6545), which guarantees the right of trial by jury, and provides that trial by jury shall remain inviolate.　And it is urged that in the Georgia workmen's compensation act and the amendments thereto no provision is made for trial by a jury of any of the issues of fact that might be raised in a case involving a claim like that now under consideration.　There is no merit in this ground.　Under the decisions of many courts, the plaintiffs in error have waived this constitutional objection by voluntarily bringing themselves within the operation of the act. In the case of Booth Fisheries Co. v. Industrial Commission of Wisconsin, 271 U. S. 208 (46 Sup. Ct. 491), it was said by the Supreme Court of the United States, affirming the judgment of the Supreme Court of Wisconsin, "More than this, the employer in this case, having elected to accept the provisions of the law, and such benefits and immunities as it gives, may not escape its burdens by asserting that it is unconstitutional.　The election is a waiver and estops such complaint.　Daniels v. Tearney, 102 U. S. 415, 26 L. ed. 187; Grand Rapids &.I. R. Co. v. Osborn, 193 U. S. 17, 24 S. Ct. 310, 48 L. ed. 598."　Numerous text-writers laying down the same doctrine might be quoted, where the text is supported by the citation of authorities.　But we will not decide finally here the question as to whether there was such a waiver as precluded the plaintiffs in error from raising this point.　We base our decision that this is not a valid objection to the act upon the ruling that there is no constitutional guaranty of trial by jury of the issues arising under this act.　The entire procedure involved in the act has been brought into existence or created by the legislature since the adoption of our constitution containing the provisions that the right of trial by a jury shall remain inviolate.　In

the case of *Crowell* v. *Akin,* 152 *Ga.* 126 (108 S. E. 791), it was said: "This brings us to a consideration of the second ground of attack on the act. Article 6, section 18, paragraph 1, of the constitution of this State (Civil Code (1910), § 6545) declares that 'the right of trial by jury, except where it is otherwise provided in this constitution, shall remain inviolate.' This provision is uniformly construed as not conferring a right to trial by jury in all classes of cases, but merely as guaranteeing the continuance of the right unchanged as it existed either at common law or by statute in the particular State at the time of the adoption of the constitution. 24 Cyc. 101. Prior to the constitution certain classes of cases were triable without a jury. All cases triable without a jury prior to the adoption of the constitution may still be so tried. It will be conceded that it is competent for the legislature to provide for a trial without a jury in cases similar to those in which such a trial was in use prior to the adoption of the constitution. Copp *v.* Henniker, 55 N. H. 179 (20 Am. R. 194) ; *Tift* v. *Griffin,* 5 *Ga.* 185. The constitutional guaranty of jury trial does not apply to cases in equity. *Mahan* v. *Cavender,* 77 *Ga.* 118; *Poullain* v. *Brown,* 80 *Ga.* 27 (5 S. E. 107) ; *Bemis* v. *Armour Packing Co.,* 105 *Ga.* 293 (31 S. E. 173) ; *Mackenzie* v. *Flannery,* 90 *Ga.* 590 (16 S. E. 710). In a number of cases in this State it has been held that in civil actions the right of jury trial exists only in those cases where the right existed prior to the first constitution, and that the guaranty does not apply to special proceedings not then known or subsequently created or provided by statute. For examples: proceedings in the court of ordinary, *Davis* v. *Harper,* 54 *Ga.* 180 ; contested-election cases, *Freeman* v. *State,* 72 *Ga.* 812 ; proceedings against road defaulters, *Haney* v. *Commissioners,* 91 *Ga.* 773 (18 S. E. 28) ; *Blankenship* v. *State,* 40 *Ga.* 680 ; partition proceedings, *Rodgers* v. *Price,* 105 *Ga.* 67 (31 S. E. 126) ; condemnation proceedings, *Savannah etc. Ry. Co.* v. *Postal Telegraph Co.,* 112 *Ga.* 941 (38 S. E. 353) ; proceedings to validate bonds, *Lippitt* v. *Albany,* 131 *Ga.* 629 (63 S. E. 33). See *DeLamar* v. *Dollar,* 128 *Ga.* 57 (57 S. E. 85) ; *Pearson* v. *Wimbish,* 124 *Ga.* 701 (52 S. E. 751, 4 Ann. Cas. 501) ; *Flint River Steamboat Co.* v. *Foster,* 5 *Ga.* 194, 207 (48 Am. D. 248)." ' The provision in our constitution in reference to trial by jury should never in any way be impinged upon, in cases to which such provision is applicable. But it is not applicable to this case.

3.　From what has been said it follows that sections 56, 57, 58, and 59 of the act under consideration are not void upon the ground that nothing in those sections "provides movants with the right of trial by jury of the questions and issues involved in these claims, and that movants are denied the right of trial of the issues involved as guaranteed" by the constitution.

4.　In the demurrer and motion to dismiss the proceedings, made before Commissioner Norman, the further objection to the act was raised, that there can be no recovery by the claimants, because sections 6, 7, 12, 16, 17, and 18 of the compensation act "are void, unreasonable, and contrary to public policy." As to the criticism that these sections are void, the term employed is entirely too general to raise any question for decision. And the contention that the sections "are contrary to public policy" is, of course, without merit. We are dealing with an act of the Legislature, and not with a mere contract of individuals or private corporations, or any of their written obligations. But the pleader has more elaborately stated the ground of the contention that these sections of the act are unreasonable and arbitrary, by saying that the provisions of these sections are "so unreasonable, so arbitrary, and so compulsory as to force an employer to come within the provisions of the said Georgia workmen's compensation act and amendments thereto, and deny movants the right to freely and voluntarily enter into a contract of employment with claimant, in that . movants are forced and compelled to ' elect ' to operate, or suffer the consequences of having its legal and common-law rights taken away from movants (or any other employer). Movants further show that by reason of said sections 6, 7, 12, 16, 17, and 18 . . being so compulsory as to render the said Georgia workmen's compensation act and all amendments thereto to date, together with all their provisions, void of any extraterritorial effect, on account of which movants contend that neither the said Georgia workmen's compensation act and amendments thereto, nor the Industrial Commission of Georgia has any jurisdiction over the subject-matter of this claim, which appears to have happened and been transacted in the State of South Carolina and not in the State of Georgia."

We do not think that the parts of the act in question can be deemed unreasonable, arbitrary, or compulsory. Similar provisions

43

in workmen's compensation acts in other States have been passed upon by courts of last resort, and have been discussed by text-writers; and they have in almost every instance reached a conclusion different from that urged by the plaintiffs in error. In view of what distinguished text-writers and the courts have said upon this subject, and in view of the purposes to be attained by acts of this character, it seems to be an established doctrine that compensation acts like the one under consideration will not be held coercive or compulsory, when the result attaching to non-acceptance is the deprivation of rights of which a citizen may be lawfully deprived without reference to any statutes which might either be accepted or rejected. Or, in other words, a compensation act is not rendered compulsory by the fact that common-law defenses are withdrawn from employers who do not come under its operation, nor because a particular right of action is withdrawn in the case of an employee who does not accept the compensation provided by the act, and whose employer has elected to be bound by its provisions. In the case of Sullivan Machinery Co. v. Stowell, 80 N. H. 158 (114 Atl. 873), the suit was by an employee, and it was contended that the act was compulsory. In the course of that decision the court said: "The legislature did not attempt to impose upon employers the obligation to pay compensation to injured employees as provided in the act, but endeavored to induce them to accept the provisions of the act by taking from those who did not accept the act ' about the only real defense to an action by a servant which is open to his employer at common law.' Boody v. K. & C. Mfg. Co., 77 N. H. 208, 209, 210, 90 Atl. 859, 860 [L. R. A. 1916A, 10, Ann. Cas. 1914D, 1280]. Neither did they attempt to compel the servant to accept the compensation provided by the act from an employer, who had agreed to pay it in place of the damages recoverable by the law as it existed at the time the act was adopted. The provisions of section 4 were intended to induce the workman to accept the provisions of the act and to compel him, having made his election, to abide thereby." In his work on American and English Workmen's Compensation Laws (vol. 1, § 21) Mr. Honnold, in discussing questions like that immediately under consideration, says: "It would not save an act that every provision was in itself valid, and though it plainly said that all were free to reject it, if an

extreme penalty were to be inflicted upon rejection. The test is whether the act in truth resorts to undue compulsion to induce acceptance. That the person seeking work is at a disadvantage, since, unless he accept the compensation provisions of the statute, he may have small chance of securing employment, makes his decision to accept such provisions none the less the exercise of an option. Nor does it amount to coercion that an employer's failure to elect to come under an act will result in eliminating certain defenses and in changing certain rules of procedure. As said by Miller, J., in Hunter v. Colfax Consol. Coal Co. [Iowa (154 N. W. 1037)]: 'It comes to this: Can a law be void for coercion which attaches no penalty to rejection of its provisions, other than taking away, in whole or in part, that which the citizen may lawfully be deprived of without reference to any statute which might be either accepted or rejected? If the legislature may validly say: You shall not defend with contributory negligence, nor with fault of fellow servants; you must prove you are not in fault for the injury suffered by your servant while doing your work; you must effect insurance so that your insolvency may not leave him a crippled public charge, or make a public burden of his dependents; you may contract with each other to arbitrate summarily, effectively, and cheaply, and the award shall be not more than a stated sum, and you shall not contract for less payment—can validly compel all this without enacting a workmen's compensation act,—then how can the saying that these things you shall lose and these things you shall do unless you accept the act be undue compulsion? One who is at liberty to do or not to do a thing can always say: "I will not do what I can refuse to do, with or without reason, unless you do what I demand." There can be no coercion in the sight of the law effectuated by doing or not doing what one has the absolute right to do or not to do, no matter what terms are attached to doing or refraining. One who has absolute right to do or not to do a thing can attach to his doing or not doing any condition, no matter how unreasonable or arbitrary. The remedy is refusal to accede to the unreasonable demand.' An employer's election to come under the act is not coerced because of a provision that such election will be presumed if he fails to give certain notices."

We have made this somewhat lengthy extract from the text, be-

cause in the notes to it are contained references to many cases decided by the courts of this country, in which the questions here involved are fully discussed; and in these decisions are further references to other decisions supporting them.     One of the cases cited in this text is that of Evanhoff *v.* State Industrial Accident Commission, 78 Or. 503 (154 Pac. 106).     In the course of the opinion rendered in that case the court said: "Plaintiff's argument proceeds upon the theory that the act establishing the Industrial Accident Commission attempts to establish a court for the trial of causes without a jury, which it does not, and to compel workmen and employers to adjust their grievances without their counsel, which is contrary to the whole spirit and intent of the act. As before noted, the act leaves the employer free to accept the provisions of the act or to reject them as he may see fit.     If he gives notice that he rejects them, he is left to protect himself from actions for personal injury by litigation in the courts.     It is true that the act has swept away certain defenses heretofore available; but, as this could have been done in any case, he has no legal reason to complain.     If he sees fit not to avail himself of the provisions of the act, he may still protect himself by giving notice that he rejects its provisions.     It is not compulsory, and the arguments that apply with greater or less force to compulsory acts are here inapplicable.     The State says to the employer and employee alike: ' We present to you a plan of accident insurance which you may accept or reject at your own pleasure.     If you accept, you must be bound by its terms and limitations; if you reject, the courts are open to you with every constitutional remedy intact.     Take your choice between our plan and such remedies as the statute gives you.' "     The citation of these decisions might be multiplied, but they will be found referred to either in the text-book or in the decisions which we have cited, and they sustain the view which we have announced.

5.     Another contention of the plaintiffs in error is that there can be no recovery in this case by the claimant under the compensation act and amendments thereto, because that act and its amendments are void and of no force and effect, in that the act interferes with and attempts to regulate interstate commerce, and is a burden on interstate commerce in so far as this particular case is concerned.     We do not think the contention is sound.     In

the case of Federal Baseball Club *v.* National League, 259 U. S. 200 (42 Sup. Ct. 465), it was said by the Supreme Court of the United States "The business is giving exhibitions of baseball, which are purely State affairs. It is true that, in order to attain for these exhibitions the great popularity that they have achieved, competitions must be arranged between clubs from different cities and States. But the fact that in order to give the exhibitions the League must induce free persons to cross State lines and must arrange and pay for their doing so is not enough to change the character of the business. According to the distinction insisted upon in Hooper *v.* California, 155 U. S. 648, 655 [15 Sup. Ct. 207, 39 L. ed. 297], the transport is a mere incident, not the essential thing. That to which it is incident, the exhibition, although made for money, would not be called trade or commerce in the commonly accepted use of those words. As it is put by the defendants, personal effort, not related to production, is not a subject of commerce. That which in its consummation is not commerce does not become commerce among the States because the transportation that we have mentioned takes place."

6. Plaintiffs in error contend that "There can be no recovery in this case, because the relation between the deceased baseball player and the Augusta Baseball Club is not that of employee and employer as referred to in the Georgia workmen's compensation act, in that the evidence in this case does not show that at the time of the alleged injury the baseball player, for whose death this claim is made, was engaged in a 'productive industry' or in any industry as contemplated by the Georgia workmen's compensation act, and especially as contemplated in the title of said act, since it appears without a doubt that this baseball player was under a contract with the Augusta Baseball Club to engage solely in a sport or pastime, and not in an industry, and therefore was not exposed to any hazard of any industry, and could not have met his death with any industrial accident." It is true the baseball player for whose death the claim is made was not engaged in a "productive industry" at the time of the happening of the occurrence which resulted in his death; but he was engaged in a "business operated for gain or profit." Section 2(a) of the compensation act is in part as follows: "Employers shall include any . . individual, firm, association, or corporation engaged in any business operated

for gain or profit, except as hereinafter excepted." And section 2(b) in part is as follows: "Employee shall include every person, including a minor, in the service of another under contract of hire or apprenticeship, written or implied," etc. In this case the baseball player who was killed was a person "in the service of another under a contract of hire," and therefore was an "employee" under section 2(b). The title of the act in part is as follows: "An act to prevent industrial accidents; . . to establish rates of compensation for personal injuries or death sustained by employees in the course of employment; to provide methods of insuring the payment of such compensation; to create an Industrial Commission for the administration of this act, and to prescribe the powers of such commission; and for other purposes." If the title had read, "An act to establish rates of compensation for injuries or death sustained by employees engaged in industrial pursuits or in industrial business," there would have been more force in the objection raised to including the baseball player who was killed among those who are covered by the act. But the words in the caption, "to prevent industrial accidents," cover only in the most general way the purpose of the act, and other words following in the caption are broad enough to cover the case of employees engaged in other businesses. The deceased baseball player was an employee under the provisions of section 2(b) of the act.

7. It was urged, in resistance to the allowance of the award complained of, that "The accident which resulted in the death of Manager Huhn resulted from his own wilful misconduct, as evidenced by his violation of the motor-vehicle law of the State of South Carolina as to speed, which speed plaintiffs in error contend was the proximate cause of the overturning of the automobile. That the wilful misconduct of Manager Huhn was acquiesced in and participated in by Frank Reiger, who sat alongside of Manager Huhn and acquiesced in the violation of said motor-vehicle law, and failed to make any protest as to the speed or request the privilege of getting out of the automobile." In section 12 of the compensation act it is provided that "No compensation shall be allowed for any injury or death due to the employee's wilful misconduct, including intentional self-inflicted injury, or growing out of his attempt to injure another, or due to intoxication or wilful failure or refusal to use a safety appliance or perform a duty re-

quired by statute, or the wilful breach of any rule or regulation adopted by the employer and approved by the Industrial Commission." And the contention of plaintiffs in error is, that the death of the employees in question was the result of their wilful misconduct, that Huhn was driving an automobile on a public highway at an unlawful rate of speed in contravention of a statute of the State of South Carolina, and that Reiger acquiesced in the violation of the motor-vehicle law, and made no protest as to the speed. This involved a question of fact upon which it was competent for the commissioner to pass, and upon which it was his duty to pass. But movants insist that the commissioner made no finding upon this fact; that the finding of the commissioner with reference to the question as to whether or not the players violated the laws of South Carolina as to the speed of motor-vehicles is purely a conclusion of law on his part. The second section or division of the award and finding of Commissioner Norman, who heard the case in the first instance, is as follows:

"It is contended that the accident was due to the wilful misconduct of deceased; that he was driving at an unlawful rate of speed in violation of a penal statute of the State of South Carolina prescribing the manner and rate of speed at which automobiles should be operated on the highways of said State. A copy of said statute was introduced in evidence. The terms of said statute, so far as might be applicable to this case, are as follows: 'Section 2: Speed Limits. Display of Municipal Regulations. No person shall operate any vehicle on the public roads of this State at a rate of speed greater than is reasonable and proper at the time and place, having regard to the traffic and use of the highway and its condition, or so as to endanger the life, limb, or property of any person, or in any event at a greater rate than is shown in the following tabulation: (a) Passenger vehicles—not exceeding thirty-five miles per hour on rural roads, and not exceeding twenty miles per hour where the board of county commissioners or other authority in charge of any road shall cause to be placed conspicuous signs so limiting said speed.' The misconduct of deceased, if any, under said section must have consisted in his failure to 'perform a duty required by statute.' This failure, in order to bar a recovery, must have been wilful, and the burden of establishing such defense expressly rests upon the insurance car-

rier. . . It is found as a fact that deceased at the time of his death was not violating section two of said highway statute." And in the third section of the findings or award it is said: "It is held as a finding of fact that Huhn was not driving, at the time of the accident, at a speed exceeding the limit prescribed by the South Carolina statute." These were findings of fact and not mere conclusions of law, and sufficiently comply with the statute with reference to the subject we are now considering. In the award of the full commission it is said, in part: "The deceased [Huhn] was driving the car which was wrecked. It is claimed that he was guilty of wilful misconduct. This was fully covered by Commissioner Norman in his opinion, in which he held that Huhn was not violating the laws of South Carolina or the rules of Augusta Baseball Club. Commissioner Norman rightly held that Huhn was not guilty of misconduct." And we are of the opinion that the full commission was authorized thus to hold.

8. No attempt is here made to set out the evidence in the record; but after a careful consideration of the same, the court is of the opinion that there is sufficient evidence to warrant the commission in making the award complained of.

   *Judgments affirmed. All the Justices concur, except*
ATKINSON, J., who dissents from the ruling in the second division.