BARBARA HANFORD MOORE *v.* F. AMBROSE
CLARKE ET AL.

[No. 15, October Term, 1936.]

40

*Decided November 12th, 1936.*

The cause was argued before BOND, C. J., URNER, OFFUTT, PARKE, MITCHELL, SHEHAN, and JOHNSON, JJ.

*J. Kemp Bartlett, Jr.*, and *C. Damer McKenrick*, with whom were *Bartlett, Poe & Claggett* on the brief, for the appellant.

*Roszel C. Thomsen*, with whom was *Robert E. Coughlan, Jr.*, on the brief, for the appellee.

OFFUTT, J., delivered the opinion of the Court.

Bernard A. Hanford, a professional jockey, was accidentally killed while riding a horse called "Apprehensive," entered by Mrs. F. Ambrose Clarke in a horse race held at the Pimlico Race Track in Baltimore City on May 4th, 1933.

On February 24th, 1934, Mrs. Barbara Hanford Moore, his mother, filed with the State Industrial Accident Commission of Maryland, on behalf of his infant brothers and sisters, a claim for compensation against Mr. and Mrs. F. Ambrose Clarke, "and or Captain P. M. Walker," as agent for them, the Maryland Casualty Company, insurer, and Preston M. Burch, on the theory that Hanford's death resulted from an accident that arose out of and in the course of an employment by the Clarkes, Walker, and Burch, or some one or more of them. The Clarkes were insured in compliance with the Workmen's Compensation Law of this state (Code, art. 101, sec. 1 *et seq.*, as amended) by the Maryland Casualty Company, Walker was their agent, and Burch was a horse trainer to whom Hanford had formerly been apprenticed, and who had, after the termination of the apprenticeship, engaged his services as a jockey to ride his, Burch's, horses.

To that claim the persons named as employers and the insurer presented two defenses: (1) That at the time

of the accident Hanford was not an employee within the meaning of the Workmen's Compensation Law, but an independent contractor; and (2) that if he was an employee he was a casual employee, and therefore expressly excepted by its terms from the application of the statute.

Issues submitting those defenses were considered by the Commission, and it found (1) that Hanford's death did not "arise out of and in the course of employment" by Walker, Burch, or the Clarkes; (2) that when it occurred, Hanford was an independent contractor and not a casual employee; and as a result of those findings it disallowed the claim. From that decision the claimant appealed to the Superior Court of Baltimore City, where the case was tried before a jury on these three issues:

"1. Was Bernard A. Hanford acting as an independent contractor at the time of his injury?

"2. Was Bernard A. Hanford an employee of Mrs. F. Ambrose Clarke at the time of his injury?

"3. Was Bernard A. Hanford a casual employee of Mrs. F. Ambrose Clarke at the time of his injury?"

At the conclusion of the claimant's case the court instructed the jury to answer the first issue "Yes," the second issue, "No," and the third issue "No." From the judgment on the verdict, returned in accordance with those instructions, the claimant took this appeal. At some stage in the proceedings the claim against Burch was abandoned, so that the appeal concerns only the Clarkes, as principals, Walker as their agent, and the insurer.

It submits three questions: (1) Was Hanford at the time of his death an independent contractor, or was he an employee of the Clarkes or either of them, or of Walker? (2) If he was an employee, was he a casual employee within the meaning of article 101, section 65, subsection 3, Code (1935 Supplement)? and (3) May that question be considered on this appeal?

For convenience the third question will be first considered. The appellant's contention is that, if the trial court erred in ruling that Hanford was an independent con-

44

tractor, the judgment must be reversed, because, she says, since the Commission found that he was not a casual employee, the statutory presumption precluded the trial court from ruling as a matter of law that he was a casual employee, and that therefore this court, even though the undisputed facts permit no inference other than that he was a casual employee, must nevertheless remand the case for a new trial on that issue.

That contention, however, is not only contrary to the recorded decisions of this court, but is inconsistent with the expressed and explicit purpose and intention of the statute itself.

The statute, Code (1935 Supp.) art. 101, sec. 56, provides that "Any employer, employee, beneficiary or person feeling aggrieved by any decision of the Commission affecting his interests under this Article, may have the same reviewed by a proceeding in the nature of an appeal." It then provides that, in dealing with such an appeal, the court to which the appeal is taken "shall determine whether the Commission has justly considered all the facts concerning the injury, whether it has exceeded the powers granted it by the Article, and whether it has misconstrued the law and facts applicable in the case decided. If the Court shall determine that the Commission has acted within its powers and has correctly construed the law and facts, the decision of the Commission shall be confirmed; otherwise it shall be reversed or modified," and in the same section further provides that "In all Court proceedings under or pursuant to this Article, the decision of the Commission shall be *prima facie* correct and the burden of proof shall be upon the party attacking the same." It also allows an appeal to this court from the judgment of the "Circuit Court of the County or the Common Law Courts of Baltimore City" entered on any such appeal, "as in other civil cases."

The purpose of those provisions was to protect the parties to proceedings under the authority of the statute from error by the Commission in deciding controverted

issues of fact, by granting to the party aggrieved the right of having the decision of the Commission on issues of fact reviewed by the court, or by a court and jury, in a circuit court in a county, or by a common law court in the City of Baltimore, and to protect them against errors of law by the Commission or by such circuit or common law court, by granting to the party aggrieved, first, the right to have the decisions of the Commission on matters of law reviewed by such circuit or common law court, and, second, to have the decision of such court on any matter of law reviewed by this court.

It nowhere appears in the statute that the Legislature intended that any party to a proceeding before the Commission could secure a right through the Commission's error, but, on the contrary, the clear intention of the statute is that no rights shall accrue under it except upon facts proved or otherwise established sufficient to support the right asserted. The provision that the decision of the Commission shall be *"prima facie* correct" and that the burden of proof is upon the party attacking the same does not mean, therefore, that if no facts are established before the Commission sufficient to support its decision, that there is any burden of factual proof on the person attacking it, for the decision of the Commission cannot itself be accepted as the equivalent of facts which do not exist, and, in all cases, whether there is evidence legally sufficient to support the decision of the Commission is necessarily a matter of law to be decided by the court as any other question of law would be. On the other hand, where the decision of the Commission involves the consideration of conflicting evidence as to essential facts, or the deduction of permissible but diverse inferences therefrom, its solution of such conflict is presumed to be correct, and the burden of proof is upon the party attacking it to show that it was erroneous. But even there the burden may be one of persuasion rather than proof, for the appellant to overcome it need not produce additional evidence, but may rely upon the identical evidence before the Commission; it is enough if he can

convince the court or jury that the Commission erred in interpreting the facts or the inferences deducible therefrom, or in construing the law applicable thereto.

Where the facts are undisputed, and permit no inferences consistent with the existence of a supposed or asserted right, the existence of such right, wherever it arises, whether before the Commission, the trial court, or this court, is an unmixed question of law. If it were otherwise, the rights of parties to proceedings under the statute would depend not upon the law but upon the unguided and unrestrained discretion of men.

That was the construction placed upon the statute in *Harrison v. Central Construction Co.*, 135 Md. 170, 108 A. 874, 878, where the court, speaking through Judge Burke, said: "The question as to whether an injury arose out of or in the course of the employment is ordinarily, like negligence or want of probable cause, a mixed question of law and fact, but when the facts have been ascertained and agreed upon by the parties, or are undisputed, and there is no dispute as to the inferences to be drawn from the facts, the question becomes one of law and may be decided by the court." In *Todd vs. Easton Furniture Mfg. Co.*, 147 Md. 352, 128 A. 42, 43, while the facts were undisputed, they "admitted of an inference of fact" opposed to that embodied in an instruction which directed a verdict in favor of the employer on its appeal from a decision of the Commission in favor of the employee. There, in holding that under such circumstances the statute, Code, art. 101, sec. 56, precluded the court from directing a verdict against the employee, it was said: "In view of the code provisions to that effect, it has been uniformly held, except under such conditions as existed in the case of *Harrison v. Central Construction Company*, *supra*, that the trial court is not authorized to withdraw a case from the jury at the instance of a party appealing from the Commission's determination. *Jewel Tea Co. v. Weber*, 132 Md. 183, 103 A. 476; *Coastwise Shipbuilding Co. v. Tolson*, 132 Md. 203, 103 A. 478; *Beasman & Co. v. Butler*, 133 Md. 382, 105 A. 409; *Thistle Mills v. Sparks*,

137 Md. 117, 111 A. 769; *Bell v. Steen,* 137 Md. 388, 112 A. 584; *Taylor v. Robert Ramsay Co.,* 139 Md. 113, 114 A. 830; and *Baltimore Dry Docks Co. v. Hoffman,* 142 Md. 73, 120 A. 227. In the cases last cited, the issues, as presented upon the proof, could not properly be determined against the claimants as questions of law. Those cases therefore were not within the principle stated in *Harrison v. Central Construction Co., supra.* The rule as to the burden of proof in such cases is not incompatible with the recognized rule that the issue may be decided as one of law where the facts are agreed upon, or proved without contradiction, and there is no ground of dispute as to any material inference of fact. In our opinion, no occasion for the application of the latter rule exists in the present case."

The construction placed upon the statute in those cases was approved in *Southern Can Co. v. Sachs,* 149 Md. 562, 131 A. 760, and *Coca-Cola Bottling Works v. Lilly,* 154 Md. 239, 244, 140 A. 215, 217, and the principle was restated in the latter case in this form: "Where the question involved in such decision, like the one in this case, is a mixed question of law and fact, it only becomes a question of law for the court to decide, when the facts upon which the decision of the court is rendered have been ascertained and agreed upon by the parties, or when such facts are undisputed and there is no dispute as to the inferences to be drawn from them." In *States Engineering Co. v. Harris,* 157 Md. 487, 491, 146 A. 392, 394, the court undertook to remove any confusion that may have inhered in the earlier cases upon the application of the "burden of proof" rule, saying: "We said in *Harrison v. Central Construction Co.,* 135 Md. 170, 108 A. 874, that in cases where the facts are conceded or undisputed, and there is no dispute as to the inferences to be drawn therefrom, their legal significance is a matter of law to be determined by the court, and that the expression in *Jewel Tea Co. v. Weber,* 132 Md. 182, 103 A. 476, and other cases, that the court was not authorized to say that the appellant had met the burden of proof imposed upon

it by section 56 of article 101 of the Code, was not intended to apply to such a case.  And what was said in the *Harrison* case was approved in *Todd v. Easton Furniture Mfg. Co.*, 147 Md. 352, 128 A. 42, and in *Bogatsky v. Swerdlin*, 152 Md. 18, 135 A. 416.  And the reason it becomes a matter of law for the court to decide, as was pointed out * * * in the opinion of the court in the last mentioned case, is that, if the facts are conceded, and there is no dispute as to the inference to be drawn therefrom, there is no issue of fact to be submitted to the jury."

*Beyer v. Decker*, 159 Md. 289, 291, 150 A. 804, 805, flatly decided that where "the facts are undisputed" the court might direct a verdict contrary to the decision of the Commission, because that was what was done in that case, which turned on the construction of the statute, so no question of opposed inferences was involved. In *Barnes v. Myers*, 163 Md. 209, 161 A. 279, 280, it was held: "There can be no such thing as a burden of proving legal principles. *Beyer v. Decker*, 159 Md. 289, 291, 150 A. 804; *Gunter v. Sharp & Dohme*, 159 Md. 438, 445, 151 A. 134." While in *Schemmel v. T. B. Gatch & Sons Contracting & Building Co.*, 164 Md. 671, 672, 166 A. 39, the court was dealing in part with the effect of chapter 406 of the Acts of 1931 (repealed and re-enacted with amendments, chapter 508, Acts 1933, chapter 545, Acts 1935) as construed in *Thomas v. Pennsylvania R. Co.*, 162 Md. 509, 160 A. 793, it approved the principle that, as the statute stood originally, as it was amended, and as it now stands, the burden of proof rule embodied in it has no application to a case where the facts are undisputed or conceded, and susceptible of no inference supporting appellant's contention, or where they are disputed, but, whether proved or not, permit no inference supporting such contention, the question on appeal is one of law unaffected by the burden of proof rule.

Turning again to this appeal, as stated *supra*, the Commission decided that the claimant was not entitled to compensation, and based its decision upon a ruling that the "deceased was an independent contractor" at the time of

his death, but that he was not a "casual employee" at that time. Obviously, if he was an independent contractor, he was not an employee of any kind, casual or otherwise.

The court on appeal granted two prayers based upon the "uncontradicted evidence," one directing the jury to find that at the time of his injury Hanford was an independent contractor, the other directing them to find that he was not a casual employee. Those instructions, apart from any other objections, were bad in form because even uncontradicted evidence may permit diverse inferences. But passing that criticism, the question recurs: Was the trial court, on the appeal to it, or is this court on this appeal, precluded from affirming the decision of the Commission, if it should find that the decision was correct, but that the Commission's findings were wrong? Since that question was categorically answered in the negative in *Liggett & Meyers Tobacco Co. v. Goslin,* 163 Md. 74, 78, 160 A. 804, no further consideration of it is required.

Reduced to its lowest terms, the question presented by the appeal is whether from the record in this case it can be said as a matter of law that Hanford was not at the time of the accident an employee of the Clarkes within the scope of the Workmen's Compensation Law. The trial court held that he was not. If that conclusion was the only rational conclusion which the facts and all permissible inferences therefrom admitted, the judgment should not be reversed, even though the reasons assigned for it were illogical and untenable.

By granting the appellees' A prayer, the court ruled as a matter of law that, at the time of the accident, Hanford was an independent contractor. In that ruling there was error. The line which marks the distinction between an employee and an independent contractor is often blurred and shadowy and has not been clearly defined anywhere. Nevertheless, there are necessarily *indicia* and elements which do distinguish the two relations, and where they are sufficiently clear and positive, the question may become one for the court to decide as a matter of law, as in the case of *Barnes v. Myers,* 163 Md. 206, 161 A. 279.

50

Hanford was engaged to perform a single service, that is, to ride Mrs. Clarke's horse in a race. He was to be paid for that service in accordance with the schedule of fees fixed by the Jockey Club. The only inference consistent with the evidence is that the owner had the right to control the manner in which he was to perform that service, the only evidence on that point being the testimony of Preston M. Burch, a horse trainer, who said: "Either the owner or the trainer, representing the owner, gives the jockey instructions, the manner in which he wishes his horses ridden; that is the only control we have over them; we tell them the way we would like them to ride, either get to the front if they can or stay behind. Of course as a rule, we don't give them very many instructions unless they are little boys, who don't understand and don't know; these older boys who know how to ride we don't say much to them—if a boy comes out and has ridden the horse before, we will say, ride him like you did before, those are the only instructions, that is the only control we have over them. * * *

"Q. And with a man experienced as he was you would be rather inclined to let him use his own judgment as to the best way to handle the horse, wouldn't you? A. It depends a good deal on the trainer himself—some give a lot of instructions and some don't give any."

Upon those facts it cannot be said as a matter of law that Hanford was an independent contractor, since they permit a not unreasonable inference that he was an employee. In determining the status of one whose injury is the basis of a claim for compensation, the test most frequently applied to determine whether he is an employee or an independent contractor is that of control. If the person for whom the service is rendered retains the right to control the manner in which it is to be performed, whether the right is exercised or not, the relation between him who performs it and the person for whom it is performed is ordinarily held to be that of master and servant. Other elements may and often do affect the determination of the question, but that element persists as the most important. 71 *C. J.* 499 *et seq.*

The fact that the person rendering the service must or may use his own judgment does not itself conclude the question, for, as was said in *Claus v. Devere*, 120 Neb. 812, 235 N.W. 450, 452, "the fact that the employee must use his own judgment in the manner of performing his work does not, of itself, make him an independent contractor. Every driver of a vehicle must, in the nature of things, use his own judgment. Every carpenter must, of necessity, use his own judgment as to whether a particular piece of material is fit for the place where it has to be used. Every brick mason must determine and use some judgment as to whether the mortar furnished is of the right consistency and whether a particular brick is fit for the wall which he is laying. These facts do not convert him from an employee into an independent contractor." See, also, *Love Lumber Company v. Thigpen*, 42 Ga. App. 83, 155 S. E. 77, 78.

Other elements given greater or less weight in determining the status of the workman are the attitude and intention of the parties, the nature and scope of the work (71 *C. J.* 462), the right of the person for whom it is done to terminate the service at will, whether the work is continuing or piece work (*Id.*, 463), whether the workman furnishes the equipment and material, or pays the current expenses, and the duration and quantity of the work done, *Id.*, 470. While there is an apparent accord as to the legal principles affecting the relation, there is a hopeless and irreconcilable conflict in the cases applying those principles to varying facts. 71 *C. J.* 446. The inquiry is not aided by the statutory provision that the statute be liberally construed, because the status of a workman or an independent contractor is not defined by the statute, but is determined by the principles of the common law. *Barnes v. Myers, supra,* illustrates the type of case in which the facts were undisputed and permitted no inference supporting the claimant's contention, and where a peremptory instruction directing a verdict consistent with the only legal principles applicable to such undisputed facts and inferences is proper, while *Todd v. Easton Fur-*

*niture Mfg. Co., supra,* illustrates the type of case in which such an instruction would be improper, because, while the facts were undisputed, they permitted an inference contrary to such an instruction. So in this case the nature of the work to be done, the fact that it was described in the apprenticeship agreement as a "service or employment," that the owner of the horse had the right to direct and control the manner in which he should ride, the fact that he was engaged at a regular monthly wage to render similar services to Burch, and the fact that the service was in connection with a regular business of the persons for whom it was rendered, permitted a not unreasonable inference that he was an employee. Note, 75 *A. L. R.* 725. Cases somewhat in point are *Pierce v. Bowen,* 247 N. Y. 305, 160 N. E. 379, where it was held that one engaged to drive the respondent's horses in four races at fifteen dollars a race was an employee, *Metropolitan Cas. Ins. Co. v. Huhn,* 165 Ga. 667, 142 S. E. 121, where it was decided that a baseball player was an employee, *Hinds v. Dept. of Labor and Industries,* 150 Wash. 230, 272 P. 734, where it was held that an air pilot who was engaged by the owner of a flying field and airplane to take up passengers, and who received for that service each evening a share of the gross compensation from the flights, was an employee. Other cases exemplifying the distinction between an independent contractor and an employee may be found in *Schneider on Workmens' Compensation,* secs. 38, 39; 71 *C. J.* 477, *et seq.* The appellees' prayer should therefore have been refused.

Appellees' C prayer, as modified by the court, instructed the jury that it appeared from the uncontradicted evidence that Hanford was not a casual employee of Mrs. Clarke. The proposition stated in that prayer was the logical converse of that stated in prayer A, for if Hanford was an independent contractor, he was not an employee. But as prayer A should have been refused, the decisive question in the case is, assuming that he was an employee, was he a casual employee?

In ordinary usage, "casual," while taking some color

from its context, is readily understood as having a reasonably certain and definite meaning, but as used in the Workmen's Compensation Law, it is a word of indefinitely varied import. *Schneider, Workmen's Compensation,* sec. 29; 71 *C. J., "Workmen's Compensation Acts,"* sec. 179 and notes. Nevertheless there are *criteria* which, by what seems to be the weight of authority, have been given weight in determining whether a given employment is casual or regular, such as the nature of the work (*Hygeia Ice & Coal Co. v. Schaeffer,* 152 Md. 231, 240, 136 A. 548, *State Accident Fund v. Jacobs,* 134 Md. 133, 106 A. 255), the duration of the employment, whether it is occasional, incidental, accidental, or a usual concomitant of the employer's business, 71 *C. J.* 441. In the two cases last cited it was held, however, that in dealing with the question greater weight was to be given to the nature of the employment than to the infrequency or duration thereof, but in those cases the court was dealing with employment which in the one case extended over a canning season, and in the other for an indefinite period which might terminate in a few days or might continue for several weeks. In 33 *A. L. R.* 1463, the annotator, after examining the cases in a number of states, reaches the conclusion that "No accurate statement can be made as to whether an employment for one job or a single piece of work is to be regarded as casual employment or not. The determination of this point may be governed by the length of time contemplated, or by the nature of the contract of employment; the great majority of the cases, however, hold that such an employment, which is to last but a short time, not more than three or four days or a week, and is for a limited and temporary purpose, is casual." In *Marvil v. Elliott,* 164 Md. 659, 665, 165 A. 822, 824, while emphasizing the importance of the nature of the work as reflecting upon the casual character of the employment, the court nevertheless stressed also the duration of the employment as a factor to be considered. There it was said: "In the present case the appellee was allowed by a property owner for whom he was working to be engaged

temporarily by a contractor in charge of other work on the same premises. Upon the completion of the task to which the appellee was thus assigned, and which would probably have required not more than two or three hours for its performance, he was to resume his work for the first employer. The brief service he was undertaking to render for the contractor had no relation to any engagement between them in the past or future. It was limited to a particular occasion beginning and ending within a short portion of a single day. In view of its restricted scope and purpose, it must be regarded as casual within the meaning of the Maryland statute."

In this case the employment extended over a period of but a few minutes at most, and while it was a part of a business in which the employer was regularly engaged, it was single, isolated, complete in itself, was connected with no past or future employment, and when it was finished all contractual relations between the employer and the employee ceased. It was incidental and fortuitous in the sense that, while the employer must have employed some one to ride her horse, she was under no obligation to employ Hanford, and that while his business was riding horses in races, he was, until she employed him for that service, under no obligation to ride her horse in that race, or indeed to ride in it at all. The distinction between a casual employment and a regular employment is illustrated by his relation to Burch, by whom he was employed at a fixed monthly compensation to ride Burch's horses, when requested by Burch, in any race in which they were entered, and his relation to Mrs. Clarke, by whom he was employed for a single race.

In our opinion, therefore, the only conclusion permitted by the undisputed facts is that at the time of the accident Hanford was a casual employee, and not an employee within the scope of the statute. For that reason, appellees' B prayer, which was a general demurrer to the evidence, was properly granted, and while there was error in granting their A and C prayers, the errors are not reversible, because it conclusively appears, from the un-

disputed facts and the inferences which may properly be deduced therefrom, that Hanford was at the time of his injury a casual employee, and not within the scope of the statute.

The judgment appealed from will therefore be affirmed.

*Judgment affirmed, with costs.*