65 N.J. Super. 386 (1961)
167 A.2d 838
GEORGE FRANKLIN GROSS, JR., PETITIONER,
v.
MARTHA PELLICANE, JOSEPH PELLICANE AND LILY DEMING, RESPONDENTS.
Superior Court of New Jersey, Monmouth County Court, Law Division.
Decided January 24, 1961.
*388 Messrs. Taub & Taub, attorneys for petitioner.
Messrs. Parsons, Canzona, Blair & Smith, attorneys for respondents Martha and Joseph Pellicane.
Mr. James J. Carroll, attorney for respondent Lily Deming.
GIORDANO, J.C.C.
This proceeding involves two appeals from an award of the Division of Workmen's Compensation in favor of the petitioner George Franklin Gross, Jr., against the respondent Lily Deming.
Mrs. Deming appeals the award, and the petitioner cross-appeals the denial of his petition against the respondents Martha and Joseph Pellicane.
A perusal of the record discloses that the petitioner Gross is a jockey and he was injured on July 11, 1958 in the fifth race at Monmouth Park while riding "Lady Glade," a horse owned by the Pellicanes and trained by Mrs. Deming. Gross was a contract rider for a Mr. Harroway, a trainer. Under the agreement with Harroway the petitioner would exercise and ride his horses for a fixed amount per month, and when Harroway had no horse in a particular race Gross was then free to ride for someone else. When a *389 jockey is riding under an arrangement for a single race only, he is termed a free-lance jockey. It is undisputed that the petitioner was a free-lance jockey in the race in which he was injured.
Gross had an agent, as is the custom of the trade, who would arrange for mounts in the races for which Harroway did not require the petitioner's services.
Jockey fees are set by the rules of the New Jersey Racing Commission and are on a sliding scale according to the result of the race: $50 for win, $35 for place, $25 for show, and $20 otherwise. Also, it is customary for the jockey to receive 10% of the purse if he wins. The jockey's remuneration is deposited with the track officials and he is given a check at the end of the week for the total of all his earnings during the week. An owner is required to deposit $40 with the track officials as security for the payment of jockey fees.
The "colors," or silk shirt, worn by a jockey is furnished by the owners, but everything else used by the jockey  saddle, pants, helmet and whip  is provided by him.
A jockey is usually retained the day before the race by contacting his agent, and the trainer meets him in the paddock a few minutes prior to the race to give him instructions how to handle the particular horse in question.
The respondent Lily Deming is a trainer licensed by the New Jersey Racing Commission. While she had trained horses for the Pellicanes for four or five years, it is uncontradicted that she operated a public training stable at Monmouth Park, training horses besides those belonging to the Pellicanes. The horse stalls were assigned to her by the track.
The oral agreement between Lily Deming and the Pellicanes was to the effect that she would train their horses for $10 per day per horse. The Pellicanes also paid veterinarian and blacksmith fees, but the ordinary training expenses, such as feed, the salaries of grooms and exercise boys, were absorbed by the trainer. Mrs. Deming hired extra help *390 according to the number of horses she was training at the time.
The trainer had complete control over the racing of the Pellicane horses. She decided what races should be entered and what jockeys should be engaged. The owners could not discharge a jockey or take him off a particular horse. The Pellicanes could make suggestions concerning the entering of a particular race or the hiring of a particular jockey, but the final decision was up to the trainer.
This agreement between the trainer and the owners was renewable after every meet and turned out to be a continuing association. The Pellicanes would tell Mrs. Deming at the end of each track meet that they wanted her to go to the next track and take care of their horses there. Mrs. Pellicane testified that they could terminate their association with the trainer at the end of a meet if irreconcilable differences of opinion arose. However, she wasn't sure whether this could be done during a meet.
Mrs. Deming was authorized to withdraw moneys from the Pellicane account at the track. From this account she paid the jockey fees. If the funds on deposit were insufficient, she would pay the jockey fees from her own funds and obtain reimbursement from the Pellicanes. It is undisputed that the obligation for payment of the jockey fees was upon the owners. The track sent the owners a periodic statement of their account showing payment of jockey fees and to whom paid.
On the day prior to the race in question Mrs. Deming contacted the petitioner's agent and arranged for the petitioner to ride "Lady Glade" the next day. The trainer met the petitioner in the paddock approximately 10 or 20 minutes before the race and gave him his instructions as to the handling of the horse. The petitioner testified, "she told me that this horse had a lot of speed and to break this horse out of the gate if the horse could go right in front without me rushing her off her feet, but if she didn't show any speed in the first part to get everything in the last *391 part." Gross also testified that Mrs. Deming could have taken him off the horse up to the time he was actually in the paddock, and if he didn't follow her instructions, she wouldn't engage him again. It was brought out on cross-examination that problems sometimes arose during the race and he would have to use his own judgment as to what to do.
No deductions for withholding tax, social security, or unemployment compensation are made from the fees paid to a free-lance jockey and none were made from the fee paid to the petitioner.
Two sections of the rules of the New Jersey State Racing Commission have been referred to by the parties herein. The first, Rule 340, requires all owners and/or trainers to carry compensation insurance for all their employees, including jockeys and apprentice jockeys. Rule 601 provides, "a licensed trainer may represent the owner in the matter of * * * the employment of jockeys."
The questions presented on this appeal are:
1) Whether the petitioner was an employee or an independent contractor, and if he was an employee, was the employment casual?
2) Who was the employer of the petitioner, the owners or the trainer of the horse?
N.J.S.A. 34:15-36 defines the terms "employer" and "employees" as used in the Workmen's Compensation Act as follows:
"`Employer' is declared to be synonymous with master, and includes natural persons, partnerships, and corporations; `employee' is synonymous with servant, and includes all natural persons, including officers of corporations, who perform service for an employer for financial consideration * * *."
The act is to be liberally construed to bring as many cases as possible within its coverage. Hannigan v. Goldfarb, 53 N.J. Super. 190 (App. Div. 1958).
It is well settled that basic to the existence of an employer-employee relationship is the employer's right *392 to control the details of the employee's work, i.e., not what shall be done, but how it shall be done, and the right to discharge him. Wilson v. Kelleher Motor Freight Lines, Inc., 12 N.J. 261, 264 (1953); Condon v. Smith, 37 N.J. Super. 320 (App. Div. 1955), affirmed per curiam, 20 N.J. 557 (1956). If the person rendering the service is an independent contractor, these essentials are absent. Cappadonna v. Passaic Motors, Inc., 136 N.J.L. 299 (Sup. Ct. 1947), affirmed 137 N.J.L. 661 (E. & A. 1948).
"The status of the petitioner is to be resolved upon the totality of the facts surrounding the relationship, with due regard for the attendant circumstances, the object in view, and the course of practice in its execution." Marcus v. Eastern Agricultural Association, Inc., 58 N.J. Super. 584, 590 (App. Div. 1959), reversed on other grounds, 32 N.J. 460 (1960).
The evidence in the instant case clearly shows that the petitioner was subject to the control of the trainer and was duty-bound by his contract to follow her instructions as to the manner in which the race should be run. The fact that the instructions given in the instant case may appear to be merely informative as to the speed and capabilities of the horse is of no consequence. It is the existence of the right to control and not the actual exercise of this right which is determinative. Mahoney v. Nitroform Company, Inc., 20 N.J. 499, 506 (1956).
The fact that the petitioner would have to use his own judgment concerning unanticipated problems which arose during the race, and that he could not be discharged after the race commenced, does not belie the existence of the right to control and discharge, but is merely due to the practical exigencies of the industry in question. It is of no consequence that because of physical inability the trainer was unable to communicate his exercise of such authority to Gross.
Although there appears uncontradicted evidence of the existence of other criteria pointing to the conclusion that *393 the petitioner was an independent contractor, nevertheless, said evidence is not sufficient to overcome the clear showing of the power of Mrs. Deming to control and discharge. Wadge v. Crestwood Acres, 128 N.J.L. 551 (Sup. Ct. 1942), affirmed 129 N.J.L. 400 (E. & A. 1943) (the payment of a fixed sum by contract); Congleton v. Pura-Tex Stone Corporation, 53 N.J. Super. 282, 290-291 (App. Div. 1958) (the absence of withholding deductions).
Other jurisdictions have concluded that a free-lance jockey is an employee within the purview of Workmen's Compensation Acts. Pierce v. Bowen, 247 N.Y. 305, 160 N.E. 379 (Ct. App. 1928); Drillon v. Industrial Accident Comm., 17 Cal.2d 346, 110 P.2d 64 (Sup. Ct. 1941); Isenberg v. California Employment Stabilization Comm., 30 Cal.2d 34, 180 P.2d 11 (Sup. Ct. 1947).
The respondents rely upon Whalen v. Harrison, 51 F. Supp. 515 (D.C.N.D. Ill. 1943), which held that under facts similar to the instant case, "free-lance jockeys" were independent contractors and the owner of horses was not liable for social security taxes upon compensation paid by him to certain "free-lance jockeys" who rode for him. Judge Sullivan in that case concluded that such jockeys were not subject to any control, taking a different view of the surrounding facts. However, without exploring this case further, suffice it to say that that decision concerned the Federal Social Security Act, 42 U.S.C.A. § 1107, and the instant case involves an application of our Workmen's Compensation Act.
Judge Sullivan, in the Whalen case, quoted with approval from Ridge Country Club v. United States, 135 F.2d 718, 721 (7 Cir. 1943) as follows:
"We, too, look to the purpose of the statute and the intent of the legislature in enacting it, as well as the words used to carry out this intention. Only certain classes are the beneficiaries of this social legislation, consisting chiefly of the ordinary wage earners." (Emphasis supplied)
*394 Our Workmen's Compensation Act does not limit the term "employee" to narrow common-law concepts or ordinary wage earners, because it also "includes all natural persons * * * who perform service for an employer for financial consideration." N.J.S.A. 34:15-36. Hannigan v. Goldfarb, supra.
The respondents contend that the employment was casual, citing Moore v. Clarke, 171 Md. 39, 187 A. 887, 107 A.L.R. 924 (Ct. App. 1936), and East v. Skelly, 207 Md. 537, 114 A.2d 822 (Ct. App. 1955) (both cases involving "free-lance jockeys"). The Maryland Compensation Act provides that it "shall not apply * * * to casual employees * * *." Md. Annotated Code, Art. 101, sec. 68, subsec. 3. The Maryland act does not define the term "casual employees," as does our act. The Maryland Court of Appeals has construed an employment to be casual, where, though part of the employer's business, it was unconnected with past and future employment and contractual relations ceased when the employment was finished. Moore v. Clarke, supra.
Such is not the law of New Jersey because our Legislature has seen fit to define the casual employments which are excluded from the coverage of the act.
N.J.S.A. 34:15-36 provides:
"* * * casual employments, which shall be defined, if in connection with the employer's business, as employment the occasion for which arises by chance or is purely accidental; or if not in connection with any business of the employer, as employment not regular, periodic or recurring; * * *."
It is evident, and both the Pellicanes and Mrs. Deming readily admitted, that horse racing is a business. The question remains whether the occasion for the petitioner's employment arose by chance or is purely accidental. To state the question answers it. The employment of a jockey is an integral part of the business of racing horses, *395 the occasion for which does not arise by chance or accident. Cf. Graham v. Green, 31 N.J. 207 (1959).
The issue remains as to who was the petitioner's employer. It is the conclusion of this court that the respondent Mrs. Deming alone is responsible for the award in favor of Gross. The evidence clearly shows that Gross was hired and rode the horse in question as a result of an arrangement made between Mrs. Deming and the petitioner's agent. The trainer had complete control over the employment of a jockey and the manner in which he rode the horse. She alone had the right to discharge the jockey.
The Pellicanes were merely interested in results  that their horse was properly cared for and that he won as many horse races as possible. There was no contractual relationship between Gross and the Pellicanes. Mrs. Deming was an independent contractor who was uncontrolled by the Pellicanes in the training and racing of their horses. She was engaged in the business of training horses and she maintained a public stable. Mrs. Deming employed the jockeys in connection with her business as a trainer and not as an agent for the Pellicanes. Such was the understanding of all the parties and seems to be the custom of the racing industry.
The fact that the ultimate source of payment for the jockey fees was the Pellicanes does not prevent the aforesaid conclusion that Mrs. Deming was the employer of the petitioner. It is true that a prerequisite to the existence of an employment status is that there be a financial consideration flowing between the employer and the employee. Cf. Mahoney v. Nitroform, Inc., 20 N.J. 499 (1956). However, this requirement was satisfied in the case at bar. Mrs. Deming always made the payment of the jockey fees to the track whether from the owner's account or from her own funds and later obtained reimbursement from the owners. There was a financial consideration which flowed from Mrs. Deming to the petitioner.
It is the conclusion of this court that the petitioner Gross *396 was an employee and not an independent contractor. The employment was not casual. The respondent Lily Deming was the sole employer of the petitioner. The petition against the respondent Pellicanes should be dismissed.
The award of the Division of Workmen's Compensation is affirmed.