# STATE ex rel. RAILROAD AND WAREHOUSE COMMISSION v. GREAT NORTHERN RAILWAY COMPANY.[1]

November 28, 1913.

Nos. 18,321—(24).

**Railroad and Warehouse Commission.**

1. An order by the Railroad and Warehouse Commission requiring a railway company to provide a small station building and custodian service at a flag station, is presumed to be valid until it be shown affirmatively that such order is unlawful or unreasonable.

**Order requiring station — evidence.**

2. Where the nearest station in either direction is seven miles from such flag station, and the country tributary thereto is a prosperous farming community, and the annual revenue derived by the company from the business of such station exceeds $7,000, and the probable expense of providing the facilities required by the commission is not shown, the presumption in favor of the reasonableness and validity of the order of the commission is not overcome.

[1] Reported in 144 N. W. 155.

Note.—As to the power to compel establishment of stations, generally, see note in 17 L.R.A.(N.S.) 821. And on the question whether railroad companies may be required to establish or maintain a station that will not pay expenses, see note in 26 L.R.A.(N.S.) 444.

From an order of the Railroad and Warehouse Commission re-
quiring the Great Northern Railway Company to build and establish
at Lawndale station a certain depot with a suitable platform, and a
custodian in charge thereof, the railway company appealed to the
district court for the county of Wilkin. The appeal was heard before·
Flaherty, J., who made findings affirming the order of the commis-
sion and ordered judgment in favor of the state. From an order
denying its motion for a new trial, defendant appealed. Affirmed.

M. L. Countryman and A. L. Janes, for appellant.

Lyndon A. Smith, Attorney General, Alonzo J. Edgerton, Assis-
tant Attorney General, and Charles S. Marden, for respondent.


TAYLOR, C.

A petition with 60 signers was filed with the Railroad and Ware-
house Commission asking that a depot be established at the flag
station of Lawndale on the line of the Great Northern Railway.
After a hearing at which both the petitioners and the company were
represented, the commission made findings and issued an order direct-
ing the company to provide the depot. The company appealed there-
from to the district court. That court sustained the action of the
commission in all respects, and a further appeal brings the matter
before this court.

Lawndale is located nearly midway between the stations of Roth-
say and Barnesville, and by rail is distant about seven miles from
each. By wagon road the distances are somewhat greater. The
country tributary to Lawndale is a prosperous farming community,
and these farmers ask for the depot. The business enterprises at the
station consist only of a general store, an elevator, a blacksmith shop,
and a small mill for grinding feed. There is also a second elevator
not now in operation. The storekeeper is also postmaster, and the
elevator agent also handles coal.

The roads leading to Lawndale from the surrounding country are
better than those leading either to Rothsay or Barnesville; but resi-
dents within two or three miles of Lawndale, desiring to take a train,
or to ship or receive freight or express, frequently travel six or eight
miles to reach one of the other stations, on account of the lack of ac-

commodations at Lawndale. The accommodations consist of a small cinder platform without any depot building, a sidetrack, and a building 8 by 10 feet in size and 6 feet high in which freight in small packages may be stored. This building is kept locked and is not available for the use of passengers; but the storekeeper and the train crews are provided with keys to enable them to put in and take out freight. There is no one to receive or care for freight and the owner must look after and attend to it himself. In order to have freight shipped to and delivered at Lawndale, it is necessary to pay the charges thereon in advance, as the company will deliver freight not prepaid only at stations where it has an agent.

The freight shipments to and from Lawndale for the year ending June 30, 1912, were a little more than 2,800 tons in carload lots, and a little more than 150 tons in less than carload lots.

Two passenger trains going east and one going west stop at Lawndale for passengers when flagged. The number of passengers who took the train at this station during the year ending June 30, 1912, was 860. Those having baggage were required to place it on board the train themselves, pay the cash fare to the nearest station at which it could be checked, and there purchase a ticket and check their baggage. As these tickets were credited to the stations at which they were sold, the records of the company fail to show, with any degree of accuracy, the revenue received from the transportation of passengers from Lawndale.

Both the commission and the trial court found, "that the company does not afford reasonable facilities for the patrons at that station, and that it is reasonable and necessary that a station and custodian service be provided," and directed that a depot be provided similar to the one at the station of Carlisle, and "that a custodian be provided who shall receive and care for freight, and keep the station warm and lighted one-half hour before and after the arrival and departure of trains." The station of Carlisle referred to in the order is the next station east of Rothsay, and the conditions there existing are quite similar to those at Lawndale.

The company contends that the enforcement of the above order will impose an unreasonable expense upon it; and that the accommo-

123 M.—30.

dations required by such order are not reasonably necessary for the convenience of the public.

There is no doubt of the power of the commission to require the company to provide a suitable depot, including a passenger waiting room, if the public convenience renders the same reasonably necessary. Sections 4178, 4239, G. S. 1913; State v. Minneapolis & St. L. R. Co. 76 Minn. 469, 79 N. W. 510; State v. Northern Pacific Ry. Co. 90 Minn. 277, 96 N. W. 81; Minneapolis & St. L. R. Co. v. Minnesota, 193 U. S. 53, 24 Sup. Ct. 396, 48 L. ed. 614.

The statute regulating appeals to the courts from decisions of the commission and defining the effect that shall be given by the courts to the findings and order of the commission provides: "Such findings of fact shall be prima facie evidence of the matters therein stated, and the order shall be prima facie reasonable, and the burden of proof upon all issues raised by the appeal shall be on the appellant. If said court shall determine that the order appealed from is lawful and reasonable, it shall be affirmed and the order enforced as provided by law. If it shall be determined that the order is unlawful or unreasonable it shall be vacated and set aside." Section 4192, G. S. 1913. This rule has been uniformly applied by the courts. Steenerson v. Great Northern Ry. Co. 69 Minn. 353, 72 N. W. 713; Jacobson v. Wisconsin, M. & P. R. Co. 71 Minn. 519, 74 N. W. 893, 40 L.R.A. 389, 70 Am. St. 358; State v. Minneapolis & St. L. R. Co. 80 Minn. 191, 83 N. W. 60, 89 Am. St. 514.

In the present case it must be presumed that the circumstances justified the order of the commission, until it is shown affirmatively that furnishing the facilities required by such order will impose an unreasonable burden upon the company.

The distance from Lawndale to the nearest station in either direction is as great as the usual distance between stations, and the location is proper for a station building and custodian service, if the business tributary thereto is sufficient to warrant the expense necessary to establish and maintain such facilities.

Constructing a building, heating and lighting it, and providing a custodian, of course will entail expense, but no evidence is presented tending to show the amount of such expense.

At the trial, the company put in evidence a statement taken from its books showing its business at Lawndale for the year ending June 30, 1912. It appears from this statement that during that year the company received from outgoing freight the sum of $5,293.19; from incoming freight the sum of $1,652.12, and from 860 passengers who boarded the trains at Lawndale the sum of $527.02, making a total of $7,472.33. These were the amounts actually received by the company, and do not contain any allowance for business naturally tributary to Lawndale but transacted at neighboring stations on account of the lack of facilities at Lawndale, nor any allowance for incoming passengers, nor any amounts paid by outgoing passengers for tickets at the stations at which they checked their baggage. A moderate allowance for these items would place the annual revenue received by the company from the business of Lawndale well above the sum of $8,000. Section 4391, G. S. 1913, provides: "When the annual business from outgoing and incoming traffic at any station amounts to eight thousand dollars or more, such company shall keep an agent at such station during the business hours of each business day." While the present proceeding is not brought under this statute, we may consider the statute as indicating the legislative judgment and policy.

The question as to what accommodations are reasonably necessary to afford proper transportation facilities to the public is legislative or administrative, and not judicial, in its nature; and the courts can interfere with the action of the body entrusted with the power and duty to determine such questions only when such action oversteps the limitations, constitutional or otherwise, placed upon the exercise of such power.

Lawndale is at the proper distance from other stations for the location of a depot; and "the annual business from outgoing and incoming traffic" brings it very nearly within the rule prescribed by the statute. The commission has found "that the company does not afford reasonable facilities" at this station, and "that it is reasonable and necessary that a station and custodian service be provided." The service required is not that an agent be in attendance, "during the business hours of each business day," as required for

stations coming within the provisions of the statute; but that a custodian "receive and care for freight, and keep the station warm and lighted one-half hour before and after the arrival and departure of trains." The suggestion that this order is unreasonable because it requires the station to be warmed and lighted for all trains is without merit, as it obviously contemplates only such trains as stop at that station.

The burden is upon the company to show that the order of the commission is unlawful or unreasonable, but it has presented no evidence tending to show the probable expense of providing the designated facilities, and, in view of the location of the station and of the amount of revenue derived therefrom, has failed to make it appear that the order is either unlawful or unreasonable. The order of the trial court is affirmed.