## NORTHERN PACIFIC RAILWAY COMPANY v. VILLAGE OF RUSH, CITY.[1]

January 27, 1950.

No. 35,015.

*M. L. Countryman, Jr.,* and *G. Zan Golden,* for appellant.
*James M. McGuire* and *Harry L. Sherman,* for respondent.

[1]Reported in 40 N. W. (2d) 886.

FRANK T. GALLAGHER, JUSTICE.

Appeal from a judgment of the district court setting aside and vacating an order of the railroad and warehouse commission, hereinafter referred to as the commission.

The only question involved is whether the order of the commission closing a diagonal grade crossing over the tracks of petitioner, Northern Pacific Railway Company, is lawful and reasonable under the facts and circumstances here.

The village of Rush City, with a population of from 1,000 to 1,200 people, is located on the main line of petitioner's railroad, which runs in a north-south direction through the village. The population is about evenly divided between the east and west sides of the tracks. It appears from the record that there are three highway grade crossings over petitioner's tracks within the village limits, one at First street, one at Fourth street, and one at Fifth street. (According to the brief of the village, there is another crossing at Eighth street, which is not readily accessible from the business portion of the village.) The crossings which we are considering here are the one at the point where Fourth street crosses the right of way and tracks of petitioner, which we shall refer to herein as the Fourth street crossing, and the one where a street running diagonally from Fourth street and "C" avenue to Fifth street and "D" avenue crosses the right of way and tracks, which we shall refer to as the Fifth street crossing. The latter is the one ordered vacated and removed by the commission. There are four sets of tracks at the Fourth street crossing and five sets of tracks at the Fifth street crossing. According to the testimony of petitioner's division engineer, the Fifth street crossing on the main line is about 226 feet from the Fourth street crossing and, under the village street improvement plan, would be moved about 30 feet closer to the Fourth street crossing. The engineer said that the angle of the Fourth street crossing is about 85 degrees and that of the Fifth street crossing about 45 degrees, considering that the railroad tracks come through the village at a slight angle.

Two hearings were held in the matter, one on petition of the railroad company on August 25, 1947, before Lee McNally, chief engineer of the commission, authorized to receive evidence, and the other on petition of the village for rehearing on September 17, 1947, before Commissioners Matson and Chase. The commission found on October 13, 1947 (Commissioner Chase dissenting), that there were three highway railroad crossings over the tracks of petitioner within the limits of the village; that the village had negotiated a contract for the paving of Fourth and Fifth streets; that the Fifth street crossing, as relocated and paved in accordance with the plans submitted to the commission, would be located slightly more than 200 feet south of the Fourth street crossing and would constitute a permanent hazard to the public; that to require the vehicular traffic now using the Fifth street crossing to use the Fourth street crossing would require such traffic to travel very little farther; that if signals were installed at the Fourth street crossing all highway traffic using that crossing would receive the maximum amount of protection; and that in the interest of public safety the Fifth street crossing should be closed to vehicular traffic, and the commission so ordered. The findings did not include a specific finding that the closing of the crossing was necessary.

The order was conditioned upon compliance by petitioner with certain stipulations that it would install Minnesota standard automatic electric highway railroad grade-crossing signals at its expense at the Fourth street crossing in accordance with plans approved by the commission; that it would relocate certain water standpipes to insure that trains stopping in the village for water would not block the Fourth street crossing; and that petitioner would reimburse the village in an amount equal to their prorata share of the cost of certain paving when and if done on "D" avenue.

On October 30, 1947, the village appealed to the district court from the order of the commission, on the ground that the order was unlawful, unreasonable, arbitrary, and unsupported by competent evidence.

M. S. A. 216.24 provides for appeals from orders of the commission to the district court in part as follows:

"Any party to a proceeding before the commission, or any party affected by any order thereof, or the State of Minnesota, by the attorney general, may appeal therefrom to the district court of the county in which the complainants, or a majority of them, reside, * * *."

Section 216.25 provides in part:

"The person serving such notice of appeal shall, within five days after the service thereof, file the same with proof of service, with the clerk of the court to which such appeal is taken; and thereupon the district court shall have jurisdiction over the appeal and the same shall be entered upon the records of the district court and shall be tried therein according to the rules relating to the trial of civil actions so far as the same are applicable. * * * Such findings of fact shall be prima facie evidence of the matters therein stated, and the order shall be prima facie reasonable, and the burden of proof upon all issues raised by the appeal shall be on the appellant. If the court shall determine that the order appealed from is lawful and reasonable, it shall be affirmed and the order enforced as provided by law. If it shall be determined that the order is unlawful or unreasonable, it shall be vacated and set aside."

The matter was tried by the court without a jury. At the trial, the village clerk testified that when the village council was notified of the hearing for the abandonment of the Fifth street crossing it met to consider the matter, and that it was the opinion of the council that this crossing was a necessary crossing for the purpose of handling all the traffic that came into the village from the east and for the purpose of the departing portion of the traffic from Fourth street to Fifth street that came in from the so-called Cambridge and Grandy roads over Fifth street. He explained that the west portion of Fifth street served practically all the traffic coming from the south and west portions of Rush City and that the Fourth street portion of the street system of the village took care of the

traffic lying north; that Fourth and Fifth streets merged about a half block west of state highway No. 61; and that as the streets are now located both have a direct outlet to the area lying east of Rush City and that lying north and south. It was his opinion that the Fifth street crossing was an absolute necessity to the village, as he claimed that the closing of the crossing would place a greater public hazard on the village than by having it remain open.

The mayor also testified that in his opinion the Fifth street crossing was a public necessity. The secretary of the commercial club testified to that effect, emphasizing that if the crossing were closed it would leave the village with only one main crossing and would result in greater congestion on Fourth street than now exists.

The record contains transcripts of the testimony taken at the hearings held on August 25, 1947, before Lee McNally, chief engineer and examiner, and on September 17, 1947, before Commissioners Matson and Chase. At both hearings considerable testimony was introduced as to the "necessity" for vacating the crossing. Witnesses for the village were unanimous in opposing the removal of the crossing. These witnesses included a diversified group of officers and businessmen, such as the village clerk, the mayor, a councilman, the fire chief, the school superintendent, a member of the school board, store managers, the production manager of Land O' Lakes creamery, and a farmer, who was also president of the Rush City Cooperative Creamery Company. Some of the reasons given by the witnesses for the village in their opposition to the closing of the crossing were as follows: Injury to property values on Fifth street; blocking off of the Kaiser-Fraser building so that cars would have to back out; increase in traffic on Fourth street, augmenting the hazards of school children traveling to and from school on that street; adverse effect on business places located on Fifth street; and loss of time to the fire department in reaching fires on the opposite side of the crossing and inconvenience to drivers of trucks in having to make additional turns in order to get to business places on Fifth street. Numerous other reasons were also given. It also appeared that a road improvement program

was being undertaken in the village whereby Fifth street would be paved with concrete and the angle of the crossing straightened slightly; that contracts had been let to pave some of the roads, including Fifth street; and that grading had been completed on Fifth street at the time of the hearing and considerable paving had been done at the time of the trial. It must be conceded that the evidence adduced by the village is overwhelming as to the necessity for the crossing and the inconvenience to the village if the crossing is closed. The testimony for petitioner, given mostly by its employes, was to the effect that the elimination of the crossing would remove a hazard to the public; that Fifth street crosses the tracks at a 45-degree angle and is a greater hazard than a right-angle crossing, because drivers must look over their right shoulders, and that so far as large trucks are concerned the cabs block the view to the right. There was evidence that a tool shed, section house, water tank, depot, two sheds, and a scale house obstructed the view at the Fifth street crossing. (The scale house had been removed prior to the trial in district court.) Considerable detailed information was offered by petitioner as to the extent of the obstructions from different distances.

Both parties introduced testimony as to the amount of traffic over Fifth street. Petitioner made a count on May 15, 1947, for a 24-hour period commencing at 11 a. m., which disclosed 319 trucks, 1,288 automobiles, and 559 pedestrians using Fourth street, and 59 trucks, 200 automobiles, and 103 pedestrians using Fifth street. The village, on the other hand, offered a traffic count made by the state highway department on December 10 and 11, 1946, covering a shorter period of time. This showed 832 vehicles, with the correct factor of 1.508, which made an established 1,248 vehicles for a 24-hour period using Fifth street. There were no comparative figures for Fourth street. The village also offered its own traffic count, which disclosed that 1,068 cars, 245 trucks, 7 semitrailers, and 491 pedestrians used Fourth street, and 574 cars, 168 trucks, 13 semitrailers, and 188 pedestrians used the Fifth street crossing over a 24-hour period. The village also introduced testimony that at the time of petition-

er's count Fifth street west of Avenue "D" was blocked from traffic.

The court, after setting out the facts and the order of the commission, found that the Fifth street crossing is one of the main thoroughfares of the village and has been so for many years; that a great deal of heavy trucking passes over that crossing to various industrial and business establishments on and adjacent to the street; that to care for such heavy traffic Fifth street has been paved so as to make it an all-year permanent road; that the industrial and business establishments cannot be reached at certain times of the year by heavy trucks without additional concrete pavement on other streets; that the firehouse and fire-fighting apparatus of the village is located on Fifth street west of the railroad right of way; that several large industrial plants in the village and about one-half the residences are located on the east side of the railroad right of way; that if the Fifth street crossing is vacated time will be lost in reaching fires on the east side of the right of way; that during a period of ten years five accidents occurred on the Fifth street crossing and four on the Fourth street crossing, all of which were of a minor nature; that at times both the Fourth and Fifth street crossings are blocked by petitioner's northbound trains taking water from a standpipe located immediately to the north of Fourth street and west of the right of way; and that there is nothing in the evidence to show why the standpipe cannot be located south of the Fifth street crossing, in which event petitioner's northbound trains can take on water without blocking either of the crossings. The court concluded that there was no necessity for the vacation and removal of the grade crossing over and across the right of way and tracks of petitioner; that the order of the commission for the vacation and removal of the grade crossing was unlawful and unreasonable and not supported by the findings of the commission; and that the order of the commission be set aside and vacated. Judgment was ordered accordingly.

Attached to the court's findings, conclusions, and order is a memorandum, made a part thereof, in which the court set out that petitioner instituted the proceedings under M. S. A. 219.27; that

the village took the appeal pursuant to § 219.41; that § 216.16 pro-vides: "The commission shall hear evidence and otherwise investi-gate the matter, make findings of fact upon all matters involved, and such order or recommendation in the premises as may be just"; that § 216.25 provides that such findings of fact shall be prima facie evidence of the matters therein stated, that the order shall be prima facie reasonable, and that the burden of proof on all issues raised by appeal shall be on the appellant (in district court) ; and that if the court determines that the order appealed from is lawful and reasonable it shall be affirmed, and if it determines that the order is unlawful and unreasonable it shall be vacated and set aside. The court then stated that this was not a trial *de novo;* that under the statute the court does not put itself in the place of the commission and substitute its findings for those of the commis-sion, nor does it set aside such order on its own conception of its wisdom, but that it views the order only so far as to determine whether it is unlawful and unreasonable, citing the statute and cases. It further stated that the order of the commission must be supported by findings of fact which are in turn sustained by the evidence, and that the findings of fact must be such as to support and warrant the order made, citing cases. The memorandum then cited § 219.27, which gives the commission authority to vacate a crossing when there exists a "necessity" for such action, but stated that because the commission found that the Fifth street crossing, as it would be relocated, would be only about 200 feet south of the Fourth street crossing, and would constitute a permanent hazard, it did not think such a finding created a *necessity for an order* eliminating one of the crossings, since, it claimed, all grade cross-ings are permanent hazards. The memorandum further stated that the commission's finding to the effect that the traffic, in being re-quired to use the Fourth street crossing, would have very little farther to travel did not show any necessity for eliminating the Fifth street crossing, but rather the contrary. It stated that the facts found by the commission did not sustain the order; that there was no finding of "necessity" for the removal of the crossing; and

that if no necessity were found there would be nothing to justify the order. The memorandum further said:

"The evidence sustains the findings of fact stressed by respondent [village] but our view is that the findings did not warrant the making of the order made by the Commission. The findings do not justify the order and for that reason it is unlawful and unreasonable."

Petitioner assigns certain errors in the court's findings and conclusions, but it appears to us that the only question involved here for our consideration is whether the order of the commission closing a diagonal grade crossing over petitioner's tracks is lawful and reasonable under the facts and circumstances of this case.

As stated above, § 216.25, governing appeals to the district court from an order of the railroad and warehouse commission, provides in part that the findings of fact of the commission shall be prima facie evidence of matters stated therein, that the order shall be prima facie reasonable, and that the burden of proof on all issues raised by the appeal shall be on appellant. It further provides that if the court shall determine that the order appealed from is lawful and reasonable it shall be affirmed and the order enforced, but that if it determines that the order is unlawful or unreasonable it shall be vacated and set aside, as was done here.

In discussing the principles upon which the district court acts in reviewing an order of the commission, in State v. G. N. Ry. Co. 130 Minn. 57, 59, 153 N. W. 247, 248, Ann. Cas. 1917B, 1201, this court said:

"The statute in terms makes the reasonableness of the order of the commission a question for the court to determine on appeal. This is a valid statutory provision. The reasonableness of the order is properly a judicial question. * * *

"The principles on which the court acts in determining whether or not an order of the commission is reasonable, have been the subject of much controversy, but the law on that subject is now pretty well settled. The legislature never intended that the court should

put itself in the place of the commission, try the matter anew as an administrative body, substituting its findings for those of the commission. A statute which so provided would be unconstitutional as a delegation to the judiciary of nonjudicial powers. * * * The courts must not usurp legislative or administrative functions by setting aside a legislative or administrative order on their own conception of its wisdom. * * *

"* * * The order may be vacated as unreasonable if it is contrary to some provision of the Federal or state constitution or laws, or if it is beyond the power granted to the commission, or if it is based on some mistake of law, or if there is no evidence to support it, or if, having regard to the interest of both the public and the carrier, it is so arbitrary as to be beyond the exercise of a reasonable discretion and judgment."

In State and R. R. & W. H. Comm. v. M. & St. L. R. Co. 209 Minn. 564, 571, 297 N. W. 189, 193, this court again discussed the functions of the district court on an appeal governed by § 216.25 when it said:

"* * * The district court does not have the power on appeal or otherwise to exercise legislative or administrative power. On appeal from an order of the commission the court examines the whole matter in controversy to determine whether the evidence reasonably tends to support the findings of fact upon which the order must be based and to examine the questions of law arising from such facts. In deciding an appeal, the court, for lack of power, does not assume to exercise the functions of the commission and to substitute its own findings for those of the commission. Nor does it act on its own conception of the wisdom of the order brought before it for review. It decides only the judicial questions whether the order is reasonably supported by the evidence and whether it is lawful and reasonable. It does not try the case *de novo*. * * *

"The lawfulness and reasonableness of the commission's order is to be tested by whether it kept within its jurisdiction, whether in arriving at its decision it was guided by the controlling rule of law (in this case the statute) or acted capriciously and at pleasure,

and whether the evidence fairly supports the findings on which its conclusions rest."

See, also, Twin City Motor Bus Co. v. Rechtzigel, 229 Minn. 196, 207, 38 N. W. (2d) 825, 831. In that case, in connection with an appeal from the commission to the district court, we said:

"The rule on appeal here, therefore, is not whether the evidence reasonably sustains the district court's findings, but rather whether all of the evidence presented, including the evidence submitted to the commission and the district court as well, reasonably sustains the district court's finding that the commission's order was unlawful and unreasonable."

As recently as August 5, 1949, in State and Port Authority of St. Paul v. N. P. Ry. Co. 229 Minn. 312, 319, 39 N. W. (2d) 752, 756, we again said in connection with an appeal from an order of the railroad and warehouse commission to the district court:

"* * * The legislative power of rate making may in no event be exercised by the district court. While that court upon appeal may take evidence *de novo* to determine if, in the light thereof, the commission's order was illegal or unreasonable at the time of its making, it cannot try the matter in controversy *de novo* and substitute its own findings for those of the commission. It is not concerned with the wisdom of the commission's order. Its appellate function embraces no power of revision, but only the judicial power of review to determine for itself, after an examination of the entire matter in controversy as to both questions of fact and law, whether the commission's findings of fact, upon which its order must be based, are reasonably supported by the evidence, and whether in the light of such factual findings its order is reasonable and lawful."

It is our opinion here, upon a review of the record, including the testimony, the commission's findings and order, the court's findings, conclusions, order, and memorandum, that the trial court was fully cognizant of its duties under the law in connection with the appeal before it from the commission's order, and that its conclu-

sion that there was no necessity for the vacation and removal of the crossing and that the order of the commission was unlawful, unreasonable, and not supported by the findings of the commission should be sustained.

It is apparent here that the trial court did not attempt to exercise any legislative or administrative power, but that it examined the whole matter in controversy and determined that the evidence did not reasonably tend to support the findings of fact upon which the commission based its order. Neither does it appear that the court assumed to exercise the functions of the commission and substitute its own findings for those of the commission, or that it acted on its own conception of the wisdom of the order. Rather, it appears that the court considered only the judicial questions before it as to whether the order was reasonably supported by the evidence and whether it was lawful and reasonable.

Here, we have the unusual situation where the record shows that the population of the village of Rush City is about equally located on both sides of petitioner's tracks. In addition to that, we have a great deal of testimony from a large number of officers, businessmen, and others residing or doing business within the village, together with the layout of Fourth and Fifth streets as shown on the plat, which clearly indicates that the closing of the Fifth street crossing is not a necessity, but, on the contrary, would seriously impair the normal operation of business and the handling of traffic within the village. Surely, the testimony adduced by the village in connection with the necessity for the Fifth street crossing should be entitled to great weight. It might properly be questioned here whether the vast amount of testimony adduced by the village at both hearings before the commission received the recognition to which it was entitled, especially in view of the dissenting opinion of one of the commissioners. In any event, it is our opinion, under the facts and circumstances of this case, that the judgment of the district court should be affirmed.

Affirmed.