## DAHLEN TRANSPORT, INC. v. NEWTON G. HAHNE, d.b.a. HAHNE OIL COMPANY.
## NEWTON G. HAHNE, d.b.a. HAHNE OIL COMPANY, v. QUICKIE TRANSPORT COMPANY.

112 N. W. (2d) 630.

October 27, 1961—No. 38,333.

*Peterson & Popovich,* for appellant Dahlen Transport, Inc.
*Gordon Rosenmeier,* for appellant Quickie Transport Company.
*Larson, Lindquist, Fraser & Magnuson, Gerald E. Magnuson,* and
*Richard E. Kossow,* for respondent.

DELL, CHIEF JUSTICE.

This is an appeal from a judgment of the district court affirming an order of the Railroad and Warehouse Commission granting to respondent a certificate of convenience and necessity.

Respondent, Newton G. Hahne, is an individual doing business as Hahne Oil Company out of Virginia, Minnesota, and for some time has held authority from the Railroad and Warehouse Commission as a petroleum carrier for the transportation of petroleum products from terminals at New Brighton to various points on the Iron Range and from the origin point of Wrenshall to St. Louis County excluding the city of Duluth, to Itasca County, and to a part of Crow Wing County.

Under this authority, respondent normally transported approximately 3½ million gallons of petroleum products annually. Practically all of the gallonage hauled was from the Wrenshall origin point, and 85 to 90 percent of the entire amount was hauled for the account of Phillips Petroleum Company. The remaining 10 to 15 percent was for Western Oil & Fuel Company. Approximately 400,000 gallons, or 11 percent, were transported to his own service station. About 1¾ million gallons, or 50 percent, were transported for Phillips Petroleum Company to a bulk plant in Virginia, Minnesota, which respondent operates. The remainder of respondent's transportation was to mining companies throughout his destination area. He has been hauling petroleum products to these accounts for over 10 years and, as a result, was described as "controlling" these accounts.

In 1957, Phillips Petroleum Company and three other oil companies

constructed a new terminal in St. Louis County known as the Duluth Petroleum Products Terminal. As a result of the establishment of this new terminal, Phillips stopped using the Wrenshall terminal from which respondent previously was authorized to haul and from which practically all of respondent's hauling commenced.

In late 1957, various Minnesota intrastate petroleum carriers, including the two appellants herein, petitioned for authority to operate from the new terminal. An order was issued on December 4, 1957, granting such authority to eight petroleum carriers. On November 26, 1957, 8 days before said order, respondent applied for authority to haul from this new terminal to a destination limited to an area identical with his former rights to haul from the Wrenshall terminal. Hearing on respondent's petition was held on December 17, 1957, only 13 days after appellants were granted rights to haul from the new terminal. The commission, having in mind that respondent was seeking authority to haul from the new terminal only throughout the same area to which he had formerly been authorized to haul from the Wrenshall terminal and was asking for substantially the same rights as had been granted to the eight other carriers, namely, the right to continue to haul in the same area from a different terminal, granted his petition. The commission found:

"* * * The result [of the relocation of Phillips' terminal] will be that Applicant will be forced out of business unless his petition is granted.

"Applicant has been a resident of and in business in Virginia, Minnesota for more than 15 years. The consignees of the Phillips Company to whom applicant hauls products are personal acquaintances of applicant and he generally controls the transportation to such consignees. Such consignees are mining companies and contractors working for mining companies. The points to which applicant moves the products for such consignees are shifting.

"That these consignees, who are members of the public, will be adversely affected by the denial of this application; that the transportation service being furnished by any railroad will not be affected by the granting of the certificate and the granting of the certificate

will not have an adverse effect upon any other transportation service essential to the communities which might be affected by the granting of the certificate.

"We find that the applicant is fit and able to perform the service proposed and that public convenience and necessity requires the granting of all of the application."

Appellants offered no evidence at the hearing. They appealed to the district court and at the trial thereof offered no evidence whatsoever but rested the appeal entirely on the record made before the commission. The order of the commission was affirmed by the district court, and the appeal here is from the judgment of affirmance.

Apparently it is appellants' position that, inasmuch as the record establishes that those granted authority to haul from the new terminal a few days before respondent was granted such right are able to haul all the petroleum products required in the area in which respondent seeks authority to continue his business, the commission exceeded its authority in granting him such right.

Minn. St. 221.071, which governs the issuance of certificates of authority to petroleum haulers, as far as pertinent here, reads:

"If the commission shall find from the evidence that the applicant is fit and able to properly perform the services proposed and that public convenience and necessity requires the granting of the application or any part thereof, a certificate therefor shall be issued. In determining whether a certificate should be issued, the commission shall give primary consideration to the interests of the public that might be affected thereby, to the transportation service being furnished by any railroad which may be affected by the granting of the certificate and to the effect which the granting of the certificate will have upon other transportation service essential to the communities which might be affected by the granting of the certificate. The commission may issue a certificate as applied for or issue it for a part only of the authority sought and may attach to the authority granted such terms and conditions as in its judgment public convenience and necessity may require."

The governing statute with respect to appeal from an order of the

commission granting such authority is § 216.25,[1] which, as far as pertinent here, reads:

"* * * Such findings of fact [of the commission] shall be prima facie evidence of the matters therein stated, and the order shall be prima facie reasonable, and the burden of proof upon all issues raised by the appeal shall be on the appellant. If the court shall determine that the order appealed from is lawful and reasonable, it shall be affirmed and the order enforced as provided by law. If it shall be determined that the order is unlawful or unreasonable, it shall be vacated and set aside."

It is apparent from the findings of the commission that it took into consideration the fact that respondent was simply asking for authority to continue his business along the same line and within the same area as he had formerly been authorized to do and that to deny him such right would effectively ruin his business. Respondent testified that if he were not granted authority to haul from the new terminal he would lose the business he had formerly enjoyed in hauling for Phillips Petroleum Company, which constituted 85 to 90 percent of his business. Those whom he had formerly served testified that they desired to continue to do business with him but that if he were denied authority to haul from the new terminal they could conceivably obtain delivery of their products from other carriers. It is upon that testimony that appellants rest their appeal. Essentially, the question here is whether the commission, acting within its discretionary powers, could grant authority to respondent to haul from the new terminal in the area in which he formerly had authority to haul from the Wrenshall terminal when other certificated carriers are able to supply the necessary equipment to service the customers within that area.

■ A judicial review of the sufficiency of the evidence to sustain the findings of the commission seems at first blush to be wholly inconsistent with the statutory rule which declares that the findings of the commission "shall be prima facie *evidence* of the matters therein

---

[1]The legislative history of this statutory provision is discussed in State v. Duluth, M. & I. R. Ry. Co. 246 Minn. 383, 389, 75 N. W. (2d) 398, 404.

stated, and the order shall be prima facie reasonable." (Italics supplied.) But it need not be so if we are mindful of the judicial function in this area of review and give a reasonable application to the rules. We have heretofore stated in a number of decisions what we consider the scope of review to be.[2] Possibly some clarification of the application of the rules to facts such as we have here may be helpful.

At the outset, when a case reaches the district court on appeal from the commission we must start with the assumption that under our statute the evidence is presumptively sufficient to support the decision. This does not mean, however, that the court is completely devoid of power to examine the record to ascertain whether there is any evidentiary support for the findings. It does mean that the legislature has limited judicial review on fact issues, as far as is possible consistent with the power of courts to inquire into arbitrary acts of an administrative board, to a determination of whether there is evidentiary support for the decision made. It may be conceded that the findings of the commission must be based on evidence. The commission may not arbitrarily determine the rights of those who come before it merely on whim or caprice. However, the weight to be given the evidence and the right to draw inferences from it rest with the commission, not with the courts. When a case, on appeal to the district court, is submitted on the record before the commission and no additional proof is offered, the judicial inquiry on fact issues is limited to a determination of whether there is any evidence which will reasonably justify an inference supporting the finding made by the commission. If there is, the decision must be affirmed. If, however, there is no such evidence, it follows that the commission has not proceeded lawfully and has exceeded its power. If appellants wish to overcome a decision which, on the record of the proceedings before the commission, finds support in the evidence, they have the opportunity to introduce further evidence.

---

[2]Twin City Motor Bus Co. v. Rechtzigel, 229 Minn. 196, 38 N. W. (2d) 825; State and Port Authority of St. Paul v. N. P. Ry. Co. 229 Minn. 312, 39 N. W. (2d) 752; State v. Duluth, M. & I. R. Ry. Co. 246 Minn. 383, 75 N. W. (2d) 398; Minneapolis St. Ry. Co. v. City of Minneapolis, 251 Minn. 43, 86 N. W. (2d) 657; State v. Chicago & N. W. Ry. Co. 246 Minn. 403, 75 N. W. (2d) 411.

Here, under our statute, the burden rests on appellants to overcome the presumption of validity created by the statute. The findings of the commission are not to be lightly disregarded nor may the courts usurp the function of the commission in drawing inferences from the evidence. In State and Port Authority of St. Paul v. N. P. Ry. Co. 229 Minn. 312, 320, 39 N. W. (2d) 752, 757, we said:

"* * * the findings of fact by the commission are in themselves prima facie evidence of the matters therein stated, and such matters so found must be accepted by the district court as established until their prima facie foundation, in the light of the evidence as a whole, is swept away by *clear and convincing evidence to the contrary*. The presumption of reasonableness attached by § 216.25 to the findings and the order of the commission is not to be treated lightly and confused with the ordinary statutory presumption which usually may be rebutted with slight evidence."

Under this and similar statements in other decisions, the burden resting on appellants is clearly defined if there is any evidence reasonably justifying an inference upon which the findings of the commission could be made.

On appeal to this court, we will examine all the evidence to ascertain whether the district court's determination that the evidence sustained the commission's finding is correct.[3] That exhausts our judicial inquiry on issues of fact.

Appellants' error lies in the assumption that a finding of necessity must be based on the inability of present certificated haulers to handle the existing business. While it is true that present ability to handle existing business is an important criterion in determining necessity, it is by no means exclusive. If that were true, the first certificated hauler would always have a monopoly in a given territory upon a mere showing that he could furnish sufficient equipment to haul all traffic available for transportation. The eight certificates issued in this area

---

[3]See, Twin City Motor Bus Co. v. Rechtzigel, 229 Minn. 196, 38 N. W. (2d) 825; State v. Duluth, M. & I. R. Ry. Co. 246 Minn. 383, 75 N. W. (2d) 398.

prior to the one issued to respondent belies any such contention. In the regulation of traffic for the public good, reasonable competition as well as regulated monopoly plays its part. Determination of convenience and necessity, like determination of rates, is a legislative matter.[4] In determining the extent to which competition should be permitted, as well as the extent to which it should be limited, the commission has been legislatively granted a rather wide discretion, and it is only when it proceeds in a manner which is not legally permissible that the courts may interfere with the exercise of that discretion.

■ The term "convenience and necessity" is an elastic one for which no definite rule can be stated that will apply to all cases. Each case must stand on its own facts, and the commission must be given some latitude in applying the yardstick.[5] The mere existence of adequate transportation in an area does not deprive the commission of all authority to issue additional certificates of convenience and necessity if it is for the good of the public to do so.

Lang Transp. Corp. v. United States (S. D. Cal.) 75 F. Supp. 915, contains an exhaustive review of the powers of the Interstate Commerce Commission, which are similar to those of our Railroad and Warehouse Commission, in issuing certificates of convenience and necessity. The court there quotes from United States v. Detroit & Cleveland Navigation Co. 326 U. S. 236, 240, 66 S. Ct. 75, 77, 90 L. ed. 38, 42, where the United States Supreme Court said (75 F. Supp. 927):

"If the Commission were required to deny these applications unless it found an actual inability on the part of existing carriers to acquire the facilities necessary for future transportation needs, a limitation would be imposed on the power of the Commission which is not found in the Act. The Commission is the guardian of the public interest in determining whether certificates of convenience and necessity shall be granted. For the performance of that function the Commission has been entrusted with a wide range of discretionary authority. Interstate

---

[4]Rock Island Motor Transit Co. v. Murphy Motor Freight Lines, Inc. 239 Minn. 284, 58 N. W. (2d) 723.

[5]Illinois Cent. R. Co. v. Illinois Commerce Comm. 397 Ill. 323, 74 N. E. (2d) 545.

Commerce Commission v. Parker, 326 U. S. 60 [65 S. Ct. 1490, 89 L. ed. 2051]. Its function is not only to appraise the facts and to draw inferences from them but also to bring to bear upon the problem an expert judgment and to determine from its analysis of the total situation on which side of the controversy the public interest lies."

In State ex rel. Transport Delivery Co. v. Burton (Mo. App.) 317 S. W. (2d) 661, the facts are strikingly similar to those now before us. The court there held that the word "necessity" as used in the term "convenience and necessity" in statutes similar to ours does not mean that the service is one that is absolutely indispensable.

■ The position of appellants apparently is that if this application is denied respondent's main customer can still have goods hauled by other certificated carriers. While that may be true, as it often is where additional certificates are issued in an area already served by a certificated carrier, it clearly was within the discretionary power of the commission to determine whether the public interest would best be served by granting this certificate also. This is not a case where, as appellants apparently contend, "competitive newcomers" are being permitted to enter a territory already served by adequate transportation facilities. On the other hand, it is a case in which applicant is asking to continue only that which he was theretofore authorized to do from a different terminal point. As a matter of fact, he is asking authority to do only that which appellants themselves had sought and had obtained permission to do very shortly before respondent's petition was acted upon. Surely the commission has a right to take these things into consideration in determining a matter within its discretionary power. Appellants' whole argument rests upon the premise that respondent should now be denied the right to continue his business merely because he applied for permission to continue a few days after appellants had made the same kind of application, on the theory that by proceeding more promptly appellants had gained prior rights which should now preclude respondent from seeking the same rights. Under the facts of this case it cannot be said that the findings of the commission lack evidentiary support for an inference that the public good will best be served by permitting respondent to continue

to serve those whom he had formerly served in the same manner except from a different terminal point. There being evidence from which such inference could reasonably be drawn, and appellants having chosen to rest on the record before the commission, it follows that the decision of the commission was properly affirmed by the trial court.

Affirmed.

OTIS, JUSTICE (dissenting).

It is undisputed that at the hearings before the Railroad and Warehouse Commission and in the district court there was no evidence presented by any party demonstrating a necessity for the issuance of a certificate to respondent, Newton G. Hahne. However, the majority opinion takes the position that without reference to the testimony before the commission its order is final because appellants failed to submit to the trial court clear and convincing evidence that the order was invalid.

In reviewing decisions of the Railroad and Warehouse Commission, it is our duty to examine the commission's orders in the light of all of the evidence presented at the hearings before both the commission and the district court. No Minnesota case holds that the commission may arrive at its findings arbitrarily and capriciously. Neither may it, by invoking Minn. St. 216.25, pull itself up by its own bootstraps. If there is no evidence on which to base its conclusions, the commission may not constitutionally justify its decision by arguing that the statute treats the order itself as evidence on which to find its own support. None of the cases cited in the majority opinion so hold. In the event the order has no evidentiary basis, the statute should have no application whatever. It is only where the testimony and the inferences from it reasonably support a finding of the commission that § 216.25 is pertinent. If the evidence is conflicting or the undisputed facts admit of more than one inference, the findings of the commission under the statute are prima facie evidence of the matters therein stated, and the order is prima facie reasonable. In all other situations it is either unnecessary to apply the statute because the evidence already preponderates in favor of the commission's conclusions, or it is futile to invoke it because the facts presented in the record do not on their face permit the commission's order to stand.

Minn. St. 216.25, above quoted, does not compel the courts to abdicate their judicial function of requiring a determination of the commission to be based on the facts. We held in State ex rel. R. & W. Comm. v. G. N. Ry. Co. 123 Minn. 463, 467, 144 N. W. 155, 157:

"* * * the courts can interfere with the action of the body entrusted with the power and duty to determine such questions only when such action oversteps the limitations, constitutional or otherwise, placed upon the exercise of such power."

We further stated that if the order of the commission is unlawful or unreasonable it must be vacated and set aside.

In State and Port Authority of St. Paul v. N. P. Ry. Co. 229 Minn. 312, 319, 39 N. W. (2d) 752, 757, we called attention to the necessity for findings "reasonably supported by the evidence." The basic rule was restated in State v. Duluth, M. & I. R. Ry. Co. 246 Minn. 383, 394, 75 N. W. (2d) 398, 406, where we reiterated that the commission's order must be vacated if there is no evidence to support it. In Minneapolis St. Ry. Co. v. City of Minneapolis, 251 Minn. 43, 61, 86 N. W. (2d) 657, 670, we stated:

"The function of the district court is to determine whether, in light of all the evidence presented before the commission *and* district court, the commission's order was lawful and reasonable; and upon appeal to this court the question is not whether the evidence reasonably sustains the district court's findings, but whether *all the evidence* presented reasonably sustains the district court's finding on whether the commission's order was lawful and reasonable; * * *." (Italics supplied.)

Hence, neither the trial court nor this court is limited to an examination of the evidence or lack of evidence presented at the district court hearing, but may consider the testimony before the commission as well.

While no Minnesota case deals specifically with the impact of our statute on an order of the commission entered without sufficient evidence, similar questions have been dealt with elsewhere. Interstate Commerce Comm. v. Louisville & Nashville R. Co. 227 U. S. 88, 92, 33 S. Ct. 185, 187, 57 L. ed. 431, 434, involved the validity of a statute which the government argued made a determination of the In-

terstate Commerce Commission conclusive. The United States Supreme Court held that a finding without evidence is arbitrary and baseless, and observed:

"* * * A finding without evidence is beyond the power of the Commission. An order based thereon is contrary to law and must, in the language of the statute, 'be set aside by a court of competent jurisdiction.'"

The principles of law here involved were presented to the Maryland court in Moore v. Clarke, 171 Md. 39, 187 A. 887, 107 A. L. R. 924. There a workmen's compensation claim was disallowed by the commission, which found, however, that the decedent was not a casual employee. The Maryland statute provided that the decision of the commission was prima facie correct, and the burden of proof was on the party attacking it. On the issue of whether the decedent was a casual employee, the claimant invoked the statute even though the undisputed facts were contrary to the commission's findings. In construing the effect of the statute and the validity of the commission's orders under it, the Maryland Court of Appeals held as follows (171 Md. 45, 187 A. 890, 107 A. L. R. 928):

"It nowhere appears in the statute that the Legislature intended that any party to a proceeding before the Commission could secure a right through the Commission's error, but, on the contrary, the clear intention of the statute is that no rights shall accrue under it except upon facts proved or otherwise established sufficient to support the right asserted. The provision that the decision of the Commission shall be 'prima facie correct' and that the burden of proof is upon the party attacking the same does not mean, therefore, that if no facts are established before the Commission sufficient to support its decision, that there is any burden of factual proof on the person attacking it, for the decision of the Commission cannot itself be accepted as the equivalent of facts which do not exist, and in all cases, whether there is evidence legally sufficient to support the decision of the Commission is necessarily a matter of law to be decided by the court as any other question of law would be. On the other hand, where the decision of the Commission involves the consideration of conflicting evidence as

to essential facts or the deduction of permissible but diverse inferences therefrom, its solution of such conflict is presumed to be correct, and the burden of proof is upon the party attacking it to show that it was erroneous. *But even there the burden may be one of persuasion rather than proof, for the appellant to overcome it need not produce additional evidence, but may rely upon the identical evidence before the Commission; it is enough if he can convince the court or jury that the Commission erred in interpreting the facts or the inferences deducible therefrom, or in construing the law applicable thereto.*

"Where the facts are undisputed, and permit no inferences consistent with the existence of a supposed or asserted right, the existence of such right, wherever it arises, whether before the Commission, the trial court, or this court, is an unmixed question of law. If it were otherwise the rights of parties to proceedings under the statute would depend not upon the law but upon the unguided and unrestrained discretion of men." (Italics supplied.)

The Oklahoma court came to a similar conclusion in a telephone rate case in Pioneer T. & T. Co. v. Westenhaver, 29 Okla. 429, 449, 118 P. 354, 361, 38 L. R. A. (N.S.) 1209. It stated:

"* * * With no evidence in the record supporting the estimate of the Commission upon this item, and with all the evidence, some of which is from the state's witnesses, supporting the contention of the appellant, this finding of the Commission cannot stand. Findings of fact made by the Commission upon competent evidence from witnesses is *prima facie* presumed to be correct, but this presumption does not follow when there is no evidence supporting the findings, and there is strong evidence to the contrary."

More recently the Illinois court reached the same result in a school district annexation case. Welch v. County Board of School Trustees, 22 Ill. App. (2d) 231, 236, 160 N. E. (2d) 505, 507. In reversing the board the court summarized the law on this subject thus:

"The findings, conclusions and decisions of an administrative agency on questions of fact shall be held to be prima facie true and correct, and the court will not disturb the findings of fact made by an ad-

ministrative agency unless manifestly against the weight of the evidence. It is also the established law in Illinois that the findings of an administrative agency must be based on facts established by evidence which is introduced as such, and the administrative agency cannot rely on its own information to support its findings. * * * In Wallace v. Annunzio, 411 Ill. 172, 103 N. E. 2d 467, it was held that the findings of an administrative agency must be supported by *substantial evidence,* and that the court has power to review all questions of law and fact presented by the record. Where it is found that the order of an administrative agency is without substantial foundation in the evidence, it is the duty of the courts to set it aside."

The legislature of this state has enacted Minn. St. 221.071 making public convenience and necessity a prerequisite to an applicant's obtaining a certificate of authority to operate as a regular route petroleum carrier. It was certainly not the intention of the legislature that this law be circumvented by permitting an administrative body to enter an order having no support in the evidence, yet insulated from judicial attack by § 216.25. Constitutionally an administrative agency cannot by asserting the existence of a fact prevent the courts from scrutinizing the actualities of the situation.

In the light of all the evidence before us, the record compels a conclusion that appellants have proved by clear and convincing evidence that there was no necessity for the issuance of the certificate here in question. Having sustained their burden before the commission, it was unnecessary for the appellants to adduce further evidence in the district court, and the order of the commission should have been reversed.

FRANK T. GALLAGHER, JUSTICE (dissenting).

I agree with the dissenting opinion of Mr. Justice Otis.

Prior to 1957 the test of public convenience and necessity was not a requirement to the issuance of certificates of authority to petroleum carriers. Minn. St. 1953, § 221.49. In 1957 the legislature included the test in Minn. St. 221.071 governing the issuance of such certificates. Thereafter, on December 18, 1957, the commission granted the respondent authority to haul petroleum products from the new origin point.

It appears to me that when the legislature included the test of public convenience and necessity in the 1957 enactment as to petroleum carriers it did so for a purpose and that the term "necessity" as used in § 221.071 contemplated a definite public need for transportation service where no reasonably adequate public service existed. In my opinion the record here does not reasonably sustain the finding of the commission that public convenience and necessity required the granting of the respondent's application.

I cannot find in Mr. Hahne's testimony anything that would justify in itself a finding of public convenience and necessity. Instead it tends to show that if his application were not granted, it would affect his business rather than that of the public. He was asked on direct examination:

"Q. So that if you're not granted this application you'll lose 85 per cent of your petroleum carrier business?

"A. Yes, sir, that's right."

That statement appears to be only a conclusion on the part of Mr. Hahne. For example, Mr. Elwood Isaacs, traffic section supervisor for the Minneapolis Division of Phillips Petroleum Company, testified on cross-examination as follows:

"Q. Mr. Isaacs, if the application is not granted would this materially affect your company in any way?

"A. No, the product—we could get the product moved.

"Q. In other words are there sufficient carriers up there that could handle that if this application were not granted?

"A. Yes, I think so."

In connection with public convenience and necessity, Mr. Isaacs was further questioned as follows:

"Commr. Rasmussen: But the Commission would like to find out from your testimony whether or not it is a matter of convenience. Of course, that term—you said, yes, it would be convenient for you to have them, but the law says public convenience and necessity. Then we would like to know if you need his services, and whether it would be to the interest of your company to have his service.

"The Witness: It would be to the interest of Phillips petroleum company to have his services, but it wouldn't be of necessity.

\*     \*     \*     \*     \*

"Commr. Rasmussen: Well, your over-all statement, then, with respect to that it would not be harmful to you if this application were denied, would you want that to stand on the record?

"The Witness: Yes, sir."

It does not appear that the record here supports a finding that public convenience and necessity requires the granting of the application, or that the evidence reasonably sustains the findings of the district court that the order of the commission is lawful and reasonable. It is my opinion that in order to establish public convenience and necessity there must be evidence which is more convincing than the testimony of either Mr. Hahne or Mr. Isaacs.