# CITY OF MINNEAPOLIS v. MINNEAPOLIS TRANSIT COMPANY.

133 N. W. (2d) 364.

January 15, 1965—No. 39,315.

*Daniel S. Feidt, Robert I. Lang, Gordon Rosenmeier,* and *John E. Simonett,* for appellant.

*Keith M. Stidd,* City Attorney, and *Arvid M. Falk,* Assistant City Attorney, for respondent.

MURPHY, JUSTICE.

This matter is before us on an appeal from an order of the district court denying defendant's motion to dismiss plaintiff's appeal and certifying that the questions involved are, in the opinion of the district court, important and doubtful. The issues grow out of an application before the Minnesota Railroad and Warehouse Commission by Minneapolis Transit Company, hereinafter called Transit, for an increase in motor bus fares, which the commission granted. The city of Minneapolis appealed to the district court from the commission's order.

There are two issues before us: (1) Was the city in fact a party to the proceedings before the Railroad and Warehouse Commission so as to have status to appeal under the provisions of Minn. St. 216.24? (2) Where Transit consents to an order of the commission determining rates of fare, does the order become final so as to deprive the city of the right to have the proceedings reviewed?

Because the points raised by the appeal are unique and original, certain preliminary observations should be made with reference to the character of the proceedings with which we are here concerned. At the outset it should be emphasized that this is a conventional rate case commenced by application of Transit for authorization to increase bus fares. The application was opposed by the city. It is the most recent of numerous rate cases which have been considered by the commission and reviewed by the courts over a period of many years. Minneapolis

St. Ry. Co. v. City of Minneapolis, 251 Minn. 43, 86 N. W. (2d) 657; St. Paul City Ry. Co. v. City of St. Paul, 242 Minn. 188, 64 N. W. (2d) 487; 18 Dunnell, Dig. (3 ed.) § 9010.

Historically, proceedings relating to the establishment of urban transit fares have been controlled by Minn. St. c. 220, the Brooks-Coleman Act, which relates to the regulation of street railways. Because motor buses are now used in the operation of the public utility and the vehicles no longer run on tracks, it is apparently assumed by the commission and the parties that the explicit provisions of c. 220 no longer apply. It is assumed that the changeover from streetcar to motor bus transportation has brought into play the provisions of c. 221, which relate to the subject of control of motor carriers generally, and the provisions of c. 216, which relate to procedures and jurisdiction of the Railroad and Warehouse Commission. It may be observed that c. 220 is a rather complete legislative enactment relating to control of the street railway form of urban transportation. Under its provisions the questions now before us would not have arisen. Chapter 220 provides that the city shall be a party to rate proceedings before the commission and expressly grants the right of appeal from its orders. §§ 220.14, 220.15. The provisions of c. 221 do not deal specifically with public utilities engaged in urban mass transportation. The reason obviously is that c. 221 was designed for the control of motor transit operations generally, including the broad area of intrastate freight and passenger service. While it is established that the rate-making power of the commission is the same under both chapters, Minneapolis St. Ry. Co. v. City of Minneapolis, *supra*, it appears that the provisions of the two acts are not coextensive. Chapter 221 has not been amended to include the provisions and sanctions applicable to motor transportation as an urban public utility which c. 220 contains. Transit would accordingly apply to the urban bus transportation the same procedures as those applied by the commission to motor freight rates, routes, and authorizations of motor transport carriers generally. Transit contends that the status of the city under c. 221 is no different from that of an ordinary objector in proceedings before the commission, and argues from a case dealing with investigations of intrastate telephone rates initiated under

different statutes and on the commission's motion, State v. Tri-State Tel. Co. 146 Minn. 247, 178 N. W. 603, that the city's participation in the case before us was only for the purpose of cooperating with and assisting the commission in determining facts, and that since Transit has consented to the commission's determination, the order is final and the city is left without a right to appeal.

1. We first consider the claim of Transit that the city does not have standing to appeal from the commission's order. Transit points to the provisions of § 216.24, which so far as applicable here provide:

"Any party to a proceeding before the commission, or any party affected by any order thereof, or the State of Minnesota, by the attorney general, may appeal therefrom to the district court of the county in which the complainants, or a majority of them, reside * * *."

It is argued that under this provision the city is not a party to the proceedings or a party affected by the order. Transit concedes it might have been made a proper party if it had complied with the regulations of the commission with reference to pleadings. The rules of practice of the commission are found in Minnesota Regulations, Title IX (1960 ed.).

Regulation 9211 provides in part:

"Complainants, applicants, petitioners and respondents specifically named as such in any pleading are parties to the proceeding. No other person shall become a party to the proceeding except by leave of the commission upon petition to intervene under Rule IV, 9, * * *. Any person may enter an appearance in any proceeding, but no person shall become or shall be deemed to have become a party to the proceeding by reason of having entered an appearance therein."

Regulation 9213 provides in part:

"7. Protest. Protests may be filed containing objections to any application or petition, and the person so protesting shall be styled 'protestant,' but shall become a party to the proceeding only by leave of the commission under the provision of Rule 9211.

"8. Petition to Intervene

"(aa) When Made. Any person desiring to be made a party to a

pending proceeding may petition for leave to intervene therein, prior to or at the time it is called for hearing, but not thereafter except for good cause shown."

Transit points out that the city did not file a complaint in intervention as required by the foregoing regulations and consequently is not a party entitled to appeal. Transit relies on State v. Tri-State Tel. Co. *supra*, and J. L. Shiely Co. v. Chicago, M. St. P. & P. R. Co. 252 Minn. 535, 91 N. W. (2d) 116.

It is true that the city did not file a formal document designated as a complaint in intervention. But intervention in fact is something more than a form of pleading. It is as well the act by which a party interposes his claim of interest in an adversary proceeding, the results of which may be favorable or unfavorable to him depending upon the outcome.[1]

In considering whether the city did in fact intervene, it is necessary to examine what actually happened in the proceedings before the commission. It is important to note that the city was served with notice of Transit's application for a rate increase. Counsel for the city appeared before the commission and filed a resolution of the Minneapolis City Council directing him to "attend all hearings and to intervene on behalf of the city in opposition" to Transit's petition as dictated by the interests of the citizens of Minneapolis. The resolution recited among other things that the petition would result in "unreasonable and unjust

---

[1]The authorities cited by Transit, State v. Tri-State Tel. Co. 146 Minn. 247, 178 N. W. 603, and J. L. Shiely Co. v. Chicago, M. St. P. & P. R. Co. 252 Minn. 535, 91 N. W. (2d) 116, may be readily distinguished. The trial court in a helpful memorandum was correctly of the view that the city came within the definition of a "party" or a "party affected by the order" stated in In re Acquisition of Flying Cloud Airport, 226 Minn. 272, 278, 32 N. W. (2d) 560, 564, as follows: "An actor who participates, with or without formal pleading or intervention, as an active contestant on the merits for the determination of issues of law or fact, and who by the outcome of the proceeding will be bound and affected either favorably or adversely, with respect to an asserted interest peculiar to him as distinguished from an interest common to the public or other taxpayers in general, is a party to the proceeding."

fares" and that "the City of Minneapolis is seriously concerned with the necessity of having an efficient and adequate public transportation service available." It further appears from the commission's findings that in the proceedings, which continued over a period of at least 13 days, the city and Transit were engaged as adversaries in a proceeding by which Transit sought a fare increase and the city opposed it. The findings recite that the city of Minneapolis appeared as protestant, as did the city of Robbinsdale and the village of Brooklyn Center. The cities of St. Paul and St. Louis Park were represented by counsel "as its interests may appear." There was extensive evidence taken on the subjects of valuation, operating and maintenance expenses, taxes, depreciation, and other elements which bear upon a rate base. It is not disputed by Transit that during the litigation before the commission the city attorney was present as an active participant throughout all of the hearings, extensively cross-examined Transit's witnesses, objected to evidence sought to be introduced by Transit when appropriate, and participated in argument before the commission as points of contention arose. The city put in a complete case of its own designed to demonstrate that the rate structure proposed by Transit should not be granted. The city submitted the testimony of a valuation engineer and utility auditor. Their testimony constitutes over 200 pages of the transcript. The participation of the city was no different than it had been in previous proceedings under the Brooks-Coleman Act. The record compels the conclusion that in fact the city appeared as a party in an adversary proceeding before the commission.

2. We are satisfied that the filing with the commission of the resolution of the Minneapolis City Council directing its attorney to oppose the application of Transit before the commission was a sufficient compliance with the commission's rules with reference to pleading. Any failure to file a more formal document was a technical defect which could in no way deprive the city of its status as a party or prejudice Transit.

What we said in State and R. R. & W. H. Comm. v. Rock Island M. T. Co. 209 Minn. 105, 110, 295 N. W. 519, 523, 25 Minn., L. Rev. 938, applies here:

"One who appears as an actor in a litigation or proceeding claiming or asserting an interest in the subject matter thereof is a party. It makes no difference that the party has failed to file a written pleading. The pleading may be waived where there is a voluntary trial of the issue which the pleading would have raised."

3. We think it would be unrealistic to say that the city was not a party "affected" by the order. Here again it is necessary to keep in mind the nature and the substance of the adversary proceeding we consider. Mass transportation in an urban community is manifestly a matter of municipal concern. While the subject may be one in which the state as a whole may be interested, it is of direct and special interest to the municipality which it serves in that it relates to important considerations of convenience and well-being of its inhabitants and the economy of the community. This interest is historically recognized by previous decisions to which we have already referred. The fact that the public utility with which we are here concerned no longer runs on railway tracks does not change the character and importance of the service to the community.

4. Transit next contends that when it accepted the commission's order, it became final and nonappealable. It argues that the commission has merely exercised a delegated legislative function and that Minneapolis and its people were heard by the commission, but their interest was and is that of the state generally, and that they have no vested right to any fixed rates. It further argues that the matter could have been converted from a legislative question to a judicial one only by the objection of the utility that its legal rights had been invaded by the ordered rate structure.

We cannot agree with Transit that the ratemaking power is legislative and subject only to judicial review of constitutional matters of due process, which can be asserted only by the utility owner. Transit relies on certain language found in Lenihan v. Tri-State T. & T. Co. 208 Minn. 172, 293 N. W. 601, 25 Minn. L. Rev. 233. That authority is not controlling on the case before us. The action there was brought by certain subscribers to telephone service to enjoin the company, the Railroad and Warehouse Commission, and the attorney gen-

eral from putting into effect a schedule of rates specified in a certain order of the commission. It is important to note that that action was sequential to an adversary proceeding in which, after 9 years of litigation, the commission filed an order promulgating a schedule of telephone rates. That order was reviewed and affirmed by both the district court and this court. State v. Tri-State T. & T. Co. 204 Minn. 516, 284 N. W. 294. Pending review by the United States Supreme Court, a settlement of the controversy was effected by agreement of the parties, including the city of St. Paul, which stipulated for entry of judgment under the agreement. We said in Lenihan v. Tri-State T. & T. Co. 208 Minn. 172, 184, 293 N. W. 601, 607:

"As we view this appeal, it can and should be disposed of on the ground that both sides to the pending litigation agreed to end the same by superseding the rate schedule of March 31, 1936, by that of May 2, 1939."

The right to review as applied to the case before us is expressed by § 216.25, which provides that upon appeal—

"* * * the district court shall have jurisdiction over the appeal and the same shall be entered upon the records of the district court and shall be tried therein according to the rules relating to the trial of civil actions so far as the same are applicable. The complainant before the commission, if there was one (otherwise the state of Minnesota), shall be designated as complainant in the district court, and the carrier * * * as defendant. No further pleadings than those filed before the commission shall be necessary. Such findings of fact shall be prima facie evidence of the matters therein stated, and the order shall be prima facie reasonable, and the burden of proof upon all issues raised by the appeal shall be on the appellant. If the court shall determine that the order appealed from is *lawful and reasonable*, it shall be affirmed and the order enforced as provided by law. If it shall be determined that the order is *unlawful or unreasonable*, it shall be vacated and set aside." (Italics supplied.)

It is well established that in reviewing a rate order the inquiry is whether the order is "unlawful or unreasonable" as expressed in the

statute and not whether the rate is just and reasonable. On review of an order of the commission the city does not seek to have the court interfere with the legislative function of the commission by changing or fixing the rates established by its order. It is asking the court to follow the principles heretofore enunciated with reference to the scope of judicial review. The standard to be followed is well expressed in N. P. Ry. Co. v. Village of Rush City, 230 Minn. 144, 154, 40 N. W. (2d) 886, 891, where we said, quoting State and Port Authority of St. Paul v. N. P. Ry. Co. 229 Minn. 312, 319, 39 N. W. (2d) 752, 756:

"* * * The legislative power of rate making may in no event be exercised by the district court. While that court upon appeal may take evidence *de novo* to determine if, in the light thereof, the commission's order was illegal or unreasonable at the time of its making, it cannot try the matter in controversy *de novo* and substitute its own findings for those of the commission. It is not concerned with the wisdom of the commission's order. Its appellate function embraces no power of revision, but only the judicial power of review to determine for itself, after an examination of the entire matter in controversy as to both questions of fact and law, whether the commission's findings of fact, upon which its order must be based, are reasonably supported by the evidence, and whether in the light of such factual findings its order is *reasonable and lawful*." (Italics supplied.)

See, also, Monson Dray Line, Inc. v. Murphy Motor Freight Lines, 259 Minn. 382, 107 N. W. (2d) 850; Range Oil Supply Co. v. Chicago, R. I. & P. R. Co. (8 Cir.) 248 F. (2d) 477; Arrowhead Bus Service, Inc. v. Black & White D. C. Co. Inc. 226 Minn. 327, 32 N. W. (2d) 590; State ex rel. Murphy Motor Freight Lines, Inc. v. District Court, 230 Minn. 560, 42 N. W. (2d) 426; State v. Duluth, M. I. R. Ry. Co. 246 Minn. 383, 75 N. W. (2d) 398, appeal dismissed, 352 U. S. 804, 77 S. Ct. 46, 1 L. ed. (2d) 38; Minneapolis St. Ry. Co. v. City of Minneapolis, *supra*; Dahlen Transport, Inc. v. Hahne, 261 Minn. 218, 112 N. W. (2d) 630.

In the court below the city moved to advance the case on the calendar for trial. Transit has called attention to the fact that an appeal from

the commission's order by the city of St. Paul is pending in the District Court of Ramsey County. In the interest of saving the expense of separate trials in separate counties with the risk of conflicting decisions, Transit has urged that the appeals be consolidated. Since the appeals are from the same order in a consolidated proceeding before the commission, it would seem reasonable to consolidate the appeals also. We do not find from Transit's brief any legal impediment to such a consolidation in the district court. In any event, that issue lies within the discretion of the trial court.

Affirmed.

KNUTSON, CHIEF JUSTICE (concurring specially).

I concur in the result.